OF THE

# STATE OF MISSOURI,

AT THE

OCTOBER TERM, 1893.

---

*(Continued from Vol. 120.)*

---

FULLERTON v. FORDYCE *et al., Receivers, Appellants.*

Division One, March 5, 1894.

121    1
64a 573
121    1
133   22
121    1
138  625
121    1
s144 525
121    1
79a 540
121    1
82a 505
121    1
162  616
121    1
95a 7104

1. **Railroad**: NEGLIGENCE: RECEIVERS. Receivers who have exclusive charge and control of the property belonging to a railway company and of the management of its business, are bound to exercise the same degree of care required of its board of directors and are in like manner, liable, in their official character, for injuries resulting from the negligence of themselves or their agents and employees.

2. **Practice**: RECEIVERS: ACT OF CONGRESS. The act of congress of March 3, 1887, permitting suit against a receiver without the authority of the appointing court for any act of his in conducting the business connected with the property in his charge applies to a passenger's action for injuries caused by failure to repair a station platform.

3. ——: PERSONAL INJURIES: SURGICAL EXAMINATIONS. The trial court can, in a personal injury action, direct a personal examination of the plaintiff by special physicians appointed by the court.

VOL. 121—1                                    (1)

Fullerton v. Fordyce.

4. **Railroad**: PASSENGER: PLATFORM: NEGLIGENCE. A carrier of pas-
sengers owes to those approaching or leaving its trains the duty of
keeping its station platforms in a reasonably safe condition for con-
venient use.

5. ———: ———: ———: ———. A passenger, when leaving a train,
has the right to assume, in the absence of information to the contrary,
that the platform is in such reasonably safe condition.

6. ———: ———: ———: ———. It is gross negligence on the part
of the receivers of a railroad company to permit a hole eight inches
wide and six feet long to remain in the floor of a part of its station
platform, commonly used by passengers, for the period of four days
after knowledge of its condition by their agents.

7. ———: ———: ———: INSTRUCTION. Where the evidence in an
action by a passenger for injuries sustained from falling into such
hole is conflicting as to whether he was injured in the spine and hips,
an instruction assuming the existence of such injuries and leaving to
the jury merely the question of injuries because of being ruptured is
erroneous.

*Appeal from Scott Circuit Court.*—HON. H. C. O'BRYAN,
Judge.

REVERSED AND REMANDED.

*Sam H. West* for appellants.

(1) The court had no jurisdiction to hear and
determine this case, the suit being against receivers of
the United States court. It is not alleged in the peti-
tion or shown at the trial, that the United States court
which appointed the receivers, defendants herein, had
given permission for them to be sued in this case in the
state court. The court erred in overruling defendants'
plea to the jurisdiction. The defendants objected to
the admission of any testimony for the want of juris-
diction, and the court erred in overruling their objection.
*Barton v. Barbour*, 104 U. S. 126; Cooley's Const.
Lim. [5 Ed.], 10; *U. S. v. Hudson*, 7 Cranch, 32. (2)
The court erred in overruling defendants' plea in
abatement, setting up the final discharge of defendants

as receivers, which plea was set up in the motion and in the answer. That part of the answer was stricken out and the error in so doing was made the second ground in the motion for new trial. Upon the final discharge of a receiver by the court appointing him, suits pending against him abate. This plea of defendants sets up a good and valid defense, and should not have been stricken out. Beach on Receivers [1 Ed.], sec. 720; *Fordyce v. Beecher*, 2 Tex. Civ. App. 29. (3) The defendants objected to the introduction of any testimony on the part of the plaintiff because the petition did not state that the defendants had knowledge of the existence of the hole in the platform or that they had such knowledge sufficient length of time to have repaired it or that the platform had been in a dangerous condition long enough to have charged the defendants with knowledge of its defects. The court erred in overruling this objection and in admitting the evidence. Ray on Negligence of Imposed Duties [1 Ed.], sec. 33, p. 94; sec. 34, p. 96; *Railroad v. Fairbairn,* 48 Ark. 491; *Moore v. Railroad*, 84 Mo. 481. (4) The court erred in overruling defendants' demurrer and objections to plaintiff's evidence, on the ground that the petition did not allege that the defendants, who were officers of the federal court, had been authorized and empowered by the court appointing them to keep the depot platform at New Madrid in good repair. Beach on Receivers [1 Ed.], secs. 249, 257 and 282; High on Receivers [1 Ed.], secs. 134, 142 and 180. (5) The court erred in refusing and overruling the defendants' application for a physical personal examination of plaintiff by skilled physicians and surgeons. *Shepherd v. Railroad*, 85 Mo. 629; *Sidekum v. Railroad*, 93 Mo. 403: *Owens v. Railroad*, 95 Mo. 177. (6) The court erred in giving its first and third instructions to the jury, which were given on its own motion. These instructions assume,

as a matter of law, and affirmatively assert that the hole was unsafe and dangerous, and its existence was negligence, instead of submitting the question for the determination of the jury as an issue of fact. Whether the hole was unsafe or dangerous, and whether there was negligence in not repairing it was a question of fact for the jury to determine. The defendants were entitled to have the jury pass upon the question of fact. Buswell on Personal Injuries [1 Ed.], p. 129, sec. 93; 2 Thompson on Trials [1 Ed.], sec. 2295, and cases cited; *Matthews v. Railroad*, 26 Mo. App. 89; *State v. Wheeler*, 79 Mo. 366; *Wilkerson v. Thompson*, 82 Mo. 328; *Bank v. Crandall*, 87 Mo. 212; *Childrey v. Huntington*, 12 S. E. Rep. 536; *James v. Railroad*, 107 Mo. 480. (7) The court erred in its instructions given, as to the measure of damages. *Wilburn v. Railroad*, 36 Mo. App. 215; *Railroad v. Cotes' Adm'r*, 15 Am. & Eng. R. R. Cases, 265; *Railroad v. Sykes' Adm'x*, 96 Ill. 162–174; *Rolling Mill Co. v. Morrissey*, 18 Am. & Eng. R. R. Cases, 47; *Hawes v. Stock Yards Co.*, 103 Mo. 60. On the latter part of the first and third instructions, see *Willis v. McNeil*, 57 Texas, 478. (8) The court erred in its instructions to the jury in this, that the jury were not told the duty, if any, the defendants owed the plaintiff and did not tell the jury the degree of care required by law of defendants in reference to keeping the station platform in repair. By the instructions, the jury were in effect told that if the plaintiff fell into a hole in the platform, the defendants were liable to him in damages. Ray on Negligence of Imposed Duties [1 Ed.], sec. 33, p. 94; sec. 34, p. 96. (9) The court erred in refusing instructions asked by the defendants. Ray on Negligence of Imposed Duties [1 Ed.], sec 33, p. 94; sec. 34, p. 96; *City v. Dolan*, 34 Ill. App. 199; 2 Thompson on Trials [1 Ed.], sec. 2295. (10) The verdict is excessive and should have been set aside on defendants'

motion. 2 Thompson on Trials [1 Ed.], secs. 2299, 2300; *Britton v. Railroad*, 51 N. W. Rep. 276; *Goetz v. Ambs*, 27 Mo. 28; *Sawyer v. Railroad*, 37 Mo. 240; *Honeycutt v. Railroad*, 40 Mo. App. 674; *Furnish v. Railroad*, 102 Mo. 438; *Hanlon v. Railroad*, 104 Mo. 381; *Railroad v. Hall*, 78 Texas, 657. (11) The court erred in admitting improper testimony against the objections of the defendants. (12) The court erred in its instructions given to the jury. They exacted perfection on the part of the defendant in relation to the condition of the platform. They, in effect, told the jury that it was the duty of the defendant to keep the platform in perfect condition. The instructions given by the court were conflicting.

*Wilson Cramer* for respondent.

(1) The law imposes on railroad corporations as common carriers the duty of keeping the approaches and platforms of their stations in a safe condition. In the case of *Railroad v. Lucas*, the supreme court of Indiana says (21 N. E. Rep. 970): "A carrier of passengers is under a duty to provide and maintain safe alighting places, and for a breach of this duty must respond in damages to a passenger who, without contributory fault, on his part, is injured by a negligent failure to perform his duty." * * * Again: "After the passenger has left the cars and stations of a railway carrier, its duty as a carrier ceases, but not until then." *Lucas v. Pennsylvania Co.*, 21 N. E. Rep. (Ind.) 972; *Pennsylvania Co. v. Marion*, 23 N. E. Rep. (Ind.) 973; *Railroad v. Stansberry*, 32 N. E. Rep. (Ind.) 218; *Wallace v. Railroad*, 18 Atl. Rep. (Del.) 818; *Railroad v. Trautwein*, 19 Atl. Rep. (N. J.) 178; *Reed v. Railroad*, 4 S. E. Rep. (Va.) 587; *Watson v. Land Co.*, 8 S. Rep. (Ala.) 770; *Railroad v. Watson*, 10 S. Rep.

(Ala.) 228; *Collins v. Railroad*, 45 N. W. Rep. (Mich.) 178; *Green v. Railroad*, 36 Fed. Rep. 66; *Moore v. Railroad*, 84 Mo. 481; 2 Wood's Railway Law, p. 1163, sec. 310; Shearman & Redfield on Neg. [3 Ed.], secs. 277, 447.   (2) Railroad companies are required to furnish lights at their stations during the arrival and departure of trains at night.   *Sargent v. Railroad*, 114 Mo. 349; *Fordyce v. Merrill*, 5 S. W. Rep. (Ark.) 329; *Bueneman v. Railroad*, 20 N. W. Rep. (Minn.); *Railroad v. Lucas*, 21 N. E. Rep. (Ind.) 968.   (3) Receivers operating a railroad are common carriers and subject to the same duties and liabilities as the railroad corporation, of whose property they have control.   3 Wood's Railway Law, p. 1666, sec. 482; High on Rec., secs. 395, 396; *Meara's Adm'r v. Holbrook*, 5 Am. Rep. 633; *Winbourn's Case*, 30 Fed. Rep. (Mo.) 167; *Pope's Case*, 30 Fed. Rep. 169; *Eddy v. Lafayette*, 49 Fed. Rep. 807; *McNulta v. Lochridge*, 12 U. S. Sup. Ct. Rep. 11; *Railroad v. Cox*, 12 U. S. Sup. Ct. Rep. 905.   (4) This suit was brought in 1890, and it was unnecessary for plaintiff to obtain leave to sue the receivers.   Since the passage of the act of congress of March 3, 1887 (24 U. S. Stat. 554), and the amendatory act of August 13, 1888 (25 U. S. Stat. 436), receivers appointed by the courts of the United States may be sued without first obtaining leave.   *Trust Co. v. Railroad*, 40 Fed. Rep. 426; *Jones v. The St. Nicholas*, 48 Fed. Rep. 671; *Eddy v. Lafayette*, 49 Fed. Rep. 807; *Dillingham v. Anthony*, 11 S. W. Rep. (Tex.) 139; *Fordyce v. Withers*, 20 S. W. Rep. (Tex.) 766; *McNulta v. Lochridge*, 12 U. S. Sup. Ct. Rep. 11; *Railroad v. Cox*, 12 U. S. Sup. Ct. Rep. 905.   (5) The hole in the platform was there from four days to two weeks, according to the evidence of defendants' witnesses, and from three weeks to two months, according to plaintiff's witnesses, and it is shown that the station

Fullerton v. Fordyce.

agent, A. X. Donahue, who was also conductor of the train, was present when the hole was made. Notice to the agent was notice to the principal. (6) The court properly overruled defendant's application for an order to compel plaintiff to submit to personal examination. Defendants in actions for personal injuries have no absolute right to an order compelling plaintiff to submit to an examination, but it is a matter resting in the sound discretion of the court. *Shepard v. Railroad,* 85 Mo. 629; *Sidekum v. Railroad,* 93 Mo. 400; *Owens v. Railroad,* 95 Mo. 169. (7) Defendants' first instruction was properly refused. It is to the effect that an action for personal injuries can· not be maintained against receivers in their official capacity. (8) The second, third and fourth instructions asked by defendants were properly refused. They were based upon the supposed discharge of the receivers, while defendants did not introduce, nor even offer, evidence to show such discharge, nor could it have been received under the issues. (9) The fifth and sixth instructions asked by defendants have no evidence for their support; it was, therefore, not error to refuse them. (10) The instructions given by the court on its own motion presented the case in all of its phases fairly to the jury, and defendants' objections to them are not well taken.

MACFARLANE, J.—This is a suit prosecuted by plaintiff against the receivers of the St. Louis, Arkansas and Texas Railway Company, appointed by a United States circuit court, to recover damages for injuries received by reason of falling into a hole in the depot platform of said company at New Madrid, Missouri. Plaintiff charged defendants with negligence in not keeping its platform in a reasonably safe condition, by reason of which, on leaving a train at said station, upon which he had been a passenger, he was precipitated

into the hole in the platform and was thereby injured.

It appeared from the evidence that the platform was about four feet above the ground and from which one plank about six feet long and eight inches wide had been broken out. The agents of defendants testified that the plank had been broken by one of themselves, in moving a heavy box of goods, at least four days before the injury. Other evidence tended to prove that it had been out as long as two weeks. Plaintiff arrived on the train in the nighttime, neither the station nor the platform being lighted, and after leaving the cars walked across the platform to take a hack to a hotel, and not knowing of the hole and being unable to see it, he fell therein, by which he received the injuries for which he sued.

Defendant objected, in a proper manner, to the sufficiency of the petition. The grounds of the objection were that it nowhere appeared from the petition that plaintiff had leave, from the court appointing the receiver, to prosecute the action; and that the receivers were not liable, officially, for neglect in keeping the platform in repair unless authorized by the court to do so, which authority should appear from an averment in the petition. These objections were overruled. Objection was made to the ruling of the court in refusing to require plaintiff to submit to an examination by physicians, and to the giving of certain instructions. The other facts necessary to an understanding of the points discussed will sufficiently appear in the opinion. The verdict and judgment were for plaintiff for $15,000 and defendants appealed.

I. Receivers who have exclusive charge and control of the property belonging to a railroad company, and of the management of its business, are bound to the same degree of care as the corporation itself would have been under the management of its board of direc-

tors and are in like manner liable, in their official character, for injuries resulting from the negligence of themselves or their agents and employees. "Being actually engaged in business, justice to those with whom they deal demands that they shall be held to the same accountability whether their liabilities arise in contract or in tort." Beach on Receivers, sec. 717; *Little v. Dusenberry*, 46 N. J. Law, 641; High on Receivers, sec. 395; 2 Rorer on Railways, p. 898.

II. Previous to the act of congress of March 3, 1887, the generally accepted doctrine was that an action could not be maintained against a receiver, except by leave of the court wherein the receiver was appointed. That act declares that "Every receiver * * * may be sued in respect of any act or transaction of his, in carrying on the business connected with such property without the previous leave of the court in which said receiver or manager was appointed." The language of this statute is broad enough to include actions growing out of the negligence of the receiver, or his agents or servants. So it has been held by the supreme court of the United States that such suits are within the contemplation of said act. *Railroad v. Cox*, 145 U. S. 601; *McNulta v. Lochridge*, 141 U. S. 327.

III. After plaintiff had concluded his evidence in chief, defendant filed a written application, asking an order of the court against plaintiff to have plaintiff submit himself to a personal examination by competent and special surgeons, appointed by the court, giving as reasons therefor that the real extent of plaintiff's injuries could only be ascertained by such an examination. The court declined to make the order for the reason, as stated, that the application was not made in time. There is no doubt of the power of the court to make and enforce such an order; but to do so is held to be a matter within the discretion of the court, which

should not be interfered with unless clearly abused. *Owens v. Railroad*, 95 Mo. 177, and cases cited.

There may be reasons which do not appear on this record why an examination should not have been ordered at the time it was applied for and we are unwilling to say that the court abused its discretion in declining to make the order. This is certainly a case which calls for the opinion of disinterested and unbiased physicians after a careful, intelligent and thorough examination has been made. The physicians who testified are friends of the respective parties and their opinions are necessarily more or less biased. They differ upon matters which seem to me to be capable of positive ascertainment. As the case will have to be retried the court can have an examination made, if proper and timely application is made therefor.

IV. A carrier of passengers owes to those approaching or leaving its trains the duty of keeping its station platforms in reasonably safe condition for convenient use, and is liable to such persons, who are themselves duly careful, for damages sustained by reason of its negligence in not observing this duty. This duty and the liability of the carrier for its neglect are well settled. Hutchinson on Carriers, sec. 517; 1 Rorer on Railroads, p. 476.

It also follows from this obligation imposed by law, that a passenger, in leaving a train, has the right to assume, in the absence of information to the contrary, that he can safely pass across the depot platform to take a conveyance to his destination, and there was no error in the instruction which told the jury that plaintiff had the right to assume that the platform was reasonably safe and convenient for his use.

V. It being the duty of the receivers of this corporation to use reasonable care to see that their platform was kept in a safe and convenient condition for

use, it was gross negligence to allow a hole, eight inches wide and six feet long to remain in the floor of that part of the platform commonly used by passengers, for the period of four days after knowledge thereof by their agents. Hutchinson on Carriers, *supra;* 2 Shearm. & Redf. on Neg., sec. 411.

It is true, in general, that the question of negligence in such case is one of fact for the determination of the jury; but the evidence in this case shows that the defect was made by one of defendant's agents, in moving heavy freight, at least four days before the injury, and the station agent testified that he knew of the defect for that length of time. The most ordinary care would have prompted the repairing of the defect, or at least that some warning should be given. Necessary repairs could have been made in a few minutes and at the cost of but a few cents. We must, therefore, hold that the evidence conclusively shows that defendants had ample time after notice of the defect in which to have made necessary repairs, and it was not reversible error to give the third instruction, to the effect that, if there was a hole in the platform, which was known by defendant's agents, or might have been known by the use of ordinary care, and the same was not safely repaired, and no danger signals were put up to warn passengers, then such neglect and failure was negligence on the part of defendants.

The complaint that the instruction did not allow defendants a reasonable time in which to make repairs, can not avail them in a case like this, in which the defect was manifestly dangerous, and its existence was known for so long a time. The court might well have declared, as a matter of law, that this omission of duty was negligence.

VI.   The judgment in this case is the largest one, for personal injuries, that I have been called upon to

consider, except in *Gurley's Case* (104 Mo. 211), which was held to be excessive. We are asked to set aside this verdict upon two grounds: *First*, that the measure of damages given by the court to the jury was improper and unfair; and, *second*, that the verdict was so excessive as to show prejudice on the part of the jury in arriving at it. We need only consider the first.

The petition does not specify any special injury except that plaintiff suffered rupture from falling through the platform and "other severe, painful and permanent injuries." The evidence shows that plaintiff's body fell through the hole to his hips, upon which he lodged. This was on Monday, in the month of July. Plaintiff was a traveling commercial agent engaged in his business. He continued in the performance of his duties until he arrived at home, on Saturday thereafter, before calling in a physician. During this time he testified that he suffered from rupture and bruises on his hips. It does not appear that he was confined to his bed or room any considerable time, though he claimed he had difficulty and inconvenience in traveling and transacting his business. In February or March, after his fall, ulcers formed on one of his hips, and for a short time after his injury he complained of pains and weakness in his back. Plaintiff introduced three doctors, and defendants two, who testified as experts. All these physicians had examined plaintiff previous to the trial and had applied all the usual tests to ascertain his condition. Those introduced by plaintiff testified that they found rupture; that there were ulcers on the hip, which may have involved the hip bones; and that he was suffering from nervousness caused by injury to the spine; that this injury to the spine would likely be permanent and might result in paralysis and death.

Their testimony indicated that plaintiff was a physical wreck. On the other hand the physicians introduced by defendant, testified that they could find no symptom of rupture, or injury to the spine, and gave it as their opinion that the sores on the hip were only skin deep, and were caused intentionally by applications of some kind.

With this evidence of injury and damage the court gave this instruction:

"4. If you find for the plaintiff you will allow him such sum as will compensate him for bodily pain and suffering, mental anguish and inconvenience, in the parts that have resulted from his injury. You will also take into consideration the present and prospective condition of his rupture, if you believe from the evidence he was ruptured, and of the injuries to his hips and spine, resulting from the accident; and to the same above found, you may add compensation for the future effect of the injuries upon the use of his hips and spine, and upon his health that you believe will be occasioned by the accident, providing you believe that he has not recovered, or that his injuries are permanent."

It will be seen from the instruction that the jury was left to determine, from the evidence, whether or not plaintiff was ruptured; but the court assumed that he was injured in the hip and spine. This was more than a comment upon the evidence. It was taking entirely from the jury a vital issue upon which the evidence was conflicting and irreconcilable. The court may in its instructions to the jury assume the truth of a proposition which is established by the undisputed testimony, but it is manifestly improper to do so where there is any conflict in the evidence. *Hall v. Railroad,* 74 Mo. 302; *Barr v. Armstrong,* 56 Mo. 589; *Caldwell v. Stephens,* 57 Mo. 595. The fact that the jury was

expressly required to find that the plaintiff was rup-
tured renders the assumption that he suffered injuries
to the spine more conspicuous. It is manifest that
there could have been no such damages awarded for
such injuries to the hip and abdomen as were shown
by plaintiff's evidence. A very large part of the
damages, then, must have been given on account of
possible results from assumed injuries to the spine.

One of plaintiff's physicians placed before the
jury his gloomy prospects in the following graphic
language: "State if any other result follows from the
spinal trouble you have described? *A.* Yes, sir; of
course it depends altogether upon the extent and loca-
tion of the nervous lesions; he may be paralyzed, he
may have paralysis of his whole body; he may have
loss of speech, and loss of hearing, and loss of eye-
sight, and loss of sexual powers, and loss of digestion—
all those functions depend upon the nerves some-
times."

It may be that all these results will follow an
injury to the spine and the jury could so conclude from
this evidence; and it becomes, therefore, more impor-
tant that they should first conclude, from the evidence,
that plaintiff suffered such an injury. The instruc-
tion was improper and prejudicial and should reverse
the judgment. Reversed and remanded. All concur
except BARCLAY, J., who is absent.