STATE of Missouri ex rel. Marvin
McCLOUD, Relator,

v.

A. J. SEIER, Judge 32nd Judicial
Circuit, Division II, Respondent.

No. 60010.

Supreme Court of Missouri,
En Banc.

June 15, 1978.

Wendell W. Crow, Ford, Ford, Crow &
Reynolds, Kennett, for relator.

John M. Beaton, Kennett, for respondent.

RENDLEN, Judge.

This original proceeding in prohibition
presents the question of whether plaintiff's
treating physician may, at defendant's be-
hest, be named in a personal injury action
to examine plaintiff who, over his objection,
must submit to such examination pursuant
to Supreme Court Rule 60.

In the underlying damage action, defend-
ant moved that plaintiff be ordered exam-
ined for defendant's purposes by Dr. Mi-
chael P. Casini, one of plaintiff's personal
treating physicians for the injuries at bar.
Plaintiff, who had furnished defendant the
medical and hospital records pertaining to
the treatment of his injuries, objected to
such selection and offered to undergo ex-
amination "by any other" physician to be
suggested by defendant or the court. Re-
jecting this offer defendant pressed her mo-
tion and plaintiff-relator, when advised of
respondent's stated intention to order him
to submit to a physical examination by Dr.
Casini, petitioned here for prohibition. Our
preliminary rule issued and for reasons we
now discuss, the writ is made permanent.

■ Generally the purpose of Rule 60 [1]
providing for medical examinations in ac-

1. Pertinent portions of the Rule are as follows:
"60.01 Examination and Report—(a) Order for
Examination. In an action in which the mental
or physical condition  .   .   . of a party, is in
controversy, the court in which the action is

pending may order the party to submit to phys-
ical or mental  .   .   . examinations by a
physician or physicians  .   .   . .. The order
may be made .only on motion for good cause
shown and upon notice to the person against

tions involving the physical condition of a party, is to eliminate uncertainty concerning the medical aspects of the cause and permit the preparation of an intelligent and informed defense. It has been stated that this procedure provides a basis for obtaining, as nearly as possible, "the exact and full truth concerning the matters in controversy, in order that [the court] may bestow on litigants equal and exact justice." 25A C.J.S. Damages § 174(3). However, we deem it disruptive of the judicial process for the court to call upon plaintiff's[2] treating physician to serve as the defendant's examining physician.

Plaintiff, by bringing suit for personal injuries, placed his physical condition in issue and thus is deemed to have waived the statutory physician-patient privilege, *State ex rel. McNutt v. Keet*, 432 S.W.2d 597 (Mo. banc 1968), but we have found no case nor has authority been cited sanctioning the appointment of plaintiff's treating physician as the examiner for defendant's purposes and requiring plaintiff to submit to such examination. Notwithstanding the dilution of the privilege by the application of the principle of "waiver" in *McNutt*, "[a] physician occupies a position of trust and confidence as regards his patient—a fiduciary position. It is his duty to act with the utmost good faith. This duty of the physician flows from the relationship with his patient and is fixed by law . . . ." *Moore v. Webb*, 345 S.W.2d 239, 243 (Mo.

App.1961). In *Houghton v. West*, 305 S.W.2d 407 (Mo.1957), a suit to cancel a warranty deed on grounds of mental incapacity and undue influence, the court held that evidence establishing defendant as "plaintiff's physician" was sufficient to establish a fiduciary relationship which carried into the parties' dealings beyond the medical treatment rendered. "The relationship is one of trust and confidence; it is a consensual relationship wherein the patient knowingly seeks the assistance of the physician and the physician knowingly accepts him as a patient; and it is the duty of the physician to exercise the utmost good faith in dealing with his patient, not only in professional matters but in all other relationships." 70 C.J.S. Physicians and Surgeons, § 36, page 941. Moreover, as this duty contemplates the physician's undivided loyalty to his patient, such duty necessarily runs contrary to the dual allegiance that would result if the physician were employed and paid by his patient's adversary. The physician would per force be cast into a position of conflict.

Prior to 1943, it had been held that trial courts had inherent power to order, in a proper case, a physical or mental examination. *Fullerton v. Fordyce*, 121 Mo. 1, 25 S.W. 587 (1894); *State ex rel. American Manufacturing Co. v. Anderson*, 270 Mo. 533, 194 S.W. 268 (1917). By the laws of 1943, § 87, page 380 (now § 510.040, RSMo 1969), the legislature provided that the trial

whom the order is sought and to all other parties and shall specify the time, place, manner, conditions, and scope of the examination and the person or persons by whom it is to be made. (b) Report of Findings. (1) If requested by the party against whom an order is made under Rule 60.01(a) or the person examined, the party causing the examination to be made shall deliver to him a copy of a detailed written report of the examining physician setting out his findings, including results of all tests made, diagnosis and conclusions, together with like reports of all earlier examinations of the same condition. After delivery the party causing the examination shall be entitled upon request to receive from the party against whom the order is made a like report of any examination, previously or thereafter made, of the same condition . . . . The court on motion shall make an order against a party requiring delivery of a

report on such terms as are just, and if a physician fails or refuses to make a report the court may exclude his testimony if offered at the trial. (2) By requesting and obtaining a report of the examination so ordered or by taking the deposition of the examiner, the person examined waives any privilege he may have in that action or any other involving the same controversy, regarding the testimony of every other person who has examined or may thereafter examine him in respect of the same mental or physical condition. . . ."

2. For convenience and clarity, we refer to the parties by the roles they occupy in this case; however, Rule 60 applies to parties generally, without regard to their status as plaintiff or defendant and our holding here has general application.

court in such proceedings might order a party to submit to a physical or mental examination by a physician "chosen by the party requesting the examination. . . ." and further that "[s]uch physician shall be deemed the witness of the party procuring the examination unless called as a witness in court by the opposing party." This procedural statute was superseded by Rule 60, effective April 1, 1960, which was amended to its present form January 1, 1975. The language of § 510.040, permitting the physician to be "chosen by the party [here defendant] requesting the examination" has in effect been eliminated by the Rule and replaced by a provision in subsection 60.-01(a) that "[t]he order may be made only on motion for good cause shown and upon notice to the person against whom the order is sought and to all other parties and shall specify the time, place, manner, conditions and scope of the examination and the person or persons by whom it is to be made." While in practice it is customary for the moving party to suggest the name of an examining physician and the court to favorably consider such suggestion, selection of the examining physician and ordering plaintiff to submit to examination are matters for the trial court's determination. "The order may be made only on motion for good cause shown."

Rule 35 of the Federal Rules of Civil Procedure, similar in many respects to our Rule 60, is silent as to how the physician will be chosen and it is recognized that under the Federal Rule the moving party has no *absolute right* to name the examining physician. *Stuart v. Burford*, 42 F.R.D. 591 (N.D.Okla.1967); *Liechty v. Terrill Trucking Co.*, 53 F.R.D. 590 (E.D.Tenn. 1971). In Ohio, which by judicial decision has formulated procedures comparable to Rule 60.01(a), (although limited to actions "for damages for personal injuries") it has been held that the trial court abused its discretion in naming a physician suggested by counsel for the defendant when that counsel failed or refused to disclose certain

business and social relationships between him and the doctor. *Adkins v. Eitel*, 2 Ohio App.2d 46, 206 N.E.2d 573 (1965). For reasons closely akin, the Iowa Supreme Court in constructing Rule 132[3] of Iowa's Rules of Civil Procedure refused to name a doctor suggested by defendant when it was disclosed that the doctor was a client of defendant's attorney and the plaintiff had objected on this ground. *Main v. Tony L. Sheston-Luxor Cab Co.*, 249 Iowa 973, 89 N.W.2d 865 (1958).

■ Although, as noted above, the choice of examining physicians is generally a matter within the sound discretion of the trial court, the Rule does not contemplate appointments of the type considered here. This is seen in the requirement of subsection 60.01(b)(1) that the person causing an examination (defendant) shall if requested by the person examined (plaintiff) deliver to him "a copy of a detailed written report of the examining physician." In the usual situation if plaintiff's treating physician conducts an examination, plaintiff could reasonably expect his doctor to send him a copy of any report thereof in the course of their fiduciary relationship without the formality of requesting that his opponent (defendant) obtain and deliver the same to him. If the Rule were construed as respondent urges and an arms length relationship imposed on physician and patient, plaintiff-relator could be forced to go through defendant to obtain a copy of the report. Under the same subsection of the Rule, if the examining "physician fails or refuses to make a report the court may exclude his testimony if offered at the trial." This is a further indication that plaintiff's treating physician will not be called to make the examination, for if the physician were so appointed and should for any reason fail to report the examination results, a question would immediately arise whether his testimony concerning treatment, as well as that concerning examination, would be excluded. In addition to the divided loyalty resulting

---

**3.** Rule 132, like Missouri's Rule 60.01(a), was patterned after Rule 35 F.R.C.P. and is synonymous to Missouri's Rule 60.01(a).

from such appointment, a variety of additional problems are readily envisioned, some of which are: (1) A question could arise as to a witness' "availability" which could be determinative of the right to comment on the failure of a party to call such witness, see *Richardson v. Wendell*, 401 S.W.2d 455 (Mo.1966). (2) Could the defendant or plaintiff or both impeach the physician if he testifies? (3) Would impeachment by a party be directed to all or limited to only that portion of the testimony relating to the examination or treatment paid for by the other? (4) Could either or both argue concerning the witness' interest based on the monies paid to him by the other? (5) Which party would be obligated to compensate the physician for the court appearance? (6) Would apportionment between the parties be required relative to monies paid and services rendered for each? These and similar incongruities stemming from respondent's threatened action convince us that forcing a patient to submit to examination by his treating physician for the benefit of the patient's adversary could not have been intended by our Rule.

Defense counsel in oral argument conceded that information they sought from the physician would not be limited to matters developed during the *examination*; instead it is their stated intention that information obtained during *treatment* would be included in the report and serve as a basis for the "examining" physician's opinion. The harm and perplexing difficulties inherent in this procedure heavily outweigh any justification respondent has suggested in support of his position. The appointment of the treating physician as the examining physician is contrary to the intent of the Rule so that the threatened action may be said to exceed the court's authority. In such circumstances prohibition lies. *State ex rel. Gray v. Jensen*, 395 S.W.2d 143 (Mo. banc 1965).

We hold that under our Rule 60, a patient-litigant cannot be required over his objection to submit to an examination by his treating physician at the request of and for the benefit of the patient's adversary.

The preliminary writ heretofore issued is made permanent.

MORGAN, C. J., BARDGETT, FINCH, DONNELLY and SEILER, JJ., and KELLY, Special Judge, concur.

SIMEONE, J., not participating because not a member of the Court when cause was submitted.