OPINION OF THE COURT
Seymour Boyers, J.
Defendants move to reargue and renew a decision of this court dated June 20, 1978 requiring them to inform plaintiff *149 of the names of any nonparty treating physicians interviewed by defendants before the receipt of any authorizations and to turn over a copy of the transcripts of such interviews. Defendant Blaugrund also moves for a stay of further discovery until the determination of this motion and the appeal from the prior order.
Defendants’ motion for leave to reargue and renew is granted, and, upon reargument and renewal, the decision of this court is adhered to. Defendant Blaugrund’s motion for a stay is denied.
The complaint in this malpractice action alleges that defendants failed to properly diagnose and treat cancer of the larynx. On April 29, 1976, after joinder of issue, an insurance investigator acting on behalf of defendant Brodnitz conducted a telephone interview with Dr. Joseph Blum, a nonparty treating physician, who consented to the interview. Plaintiff was unaware that an interview would take place, and he had not authorized the exchange of medical information. On February 17, 1978, pursuant to a routine request, plaintiff issued authorizations to obtain medical records expressly excluding the kind of interview that defendant had already conducted. Plaintiff was thereafter informed by Dr. Blum that he had already been interviewed.
The issue presented is whether the service of a complaint in a malpractice action effects a waiver of the physician-patient privilege (CPLR 4504) to the extent that defendants can privately interview a nonparty treating physician without court order or the patient’s express consent. Neither CPLR article 31 controlling discovery nor the Rules of the Appellate Division, Second Department, providing for the exchange of medical information (22 NYCRR 672.0 et seq.), expressly authorize private interviews. There has been no real showing by defendants that formal discovery procedures were inadequate to uncover the information sought by the private interview. The issue presented has been occurring frequently and its resolution requires the court to weigh the policies underlying the privilege against a policy that would afford defendants a less expensive, unrestricted investigation of a claim.
There is little New York law on point. Plaintiff relies in part on the "Standards of Practice for Doctors and Lawyers” adopted by the New York State Bar Association and Medical Society of the State of New York. The section on confidential communications provides: "In the prosecution of an action, *150 particularly one involving a claim for personal injury, it is often necessary that the physician be called upon to disclose information acquired in the course of the care and treatment of the patient. When this occurs, the physician should request, and the attorney have the patient-claimant provide, the physician with a properly executed and acknowledged authorization to the physician to make the disclosure.” Plaintiff is correct in his contention that the private interview obtained by defendants without the knowledge or consent of plaintiff violated the standards of practice for doctors and lawyers.
Defendants argue that by the service of the complaint, plaintiff waived the physician-patient privilege so as to allow private interviews with nonparty physicians. Defendants rely on Koump v Smith (25 NY2d 287) which holds that by bringing or defending a personal injury action in which mental or physical condition is affirmatively put in issue, a party waives the physician-patient privilege. However, Koump v Smith (supra) does not expressly deal with the questions before this court, namely by what procedures other than formal ones, if any, and subject to whose control shall medical information be exchanged after the privilege has been waived by the commencement of a lawsuit. These questions were not expressly dealt with by the court in Koump v Smith (supra) because plaintiff there proceeded pursuant to CPLR 3121 which allows a party to demand written authorizations to obtain hospital records. The court nowhere stated that service of a complaint justifies a private interview without plaintiffs express consent. Instead, the court emphasizes the need to comply with the discovery provisions of the CPLR and emphasizes the need to develop by affidavits the question of whether a party’s medical condition is in issue. To the extent that Koump v Smith (supra) sheds light on the case at bar, the language of the decision mandating rigorous compliance with the discovery provisions of the CPLR precludes the kind of interview conducted here on no authority other than the legal opinion of defendants’ insurance investigator.
Cwick v City of Rochester (54 AD2d 1078) is relevant insofar as the case holds that there is no authority to interview a medical witness under the Rules of the Fourth Department pertaining to the exchange of medical information or under CPLR article 31. Although in that case defendants’ counsel was in possession of an opinion letter from one of plaintiffs doctors, the court did not say that receipt of the letter waived *151 the physician-patient privilege and authorized a private interview with the doctor. The court stated that there were ample disclosure devices within the CPLR for defendants to obtain the information they sought. The import of the case is that medical discovery should be limited to that obtainable by rule, statute, or express consent and that private interviews would not be allowed even after the exchange of medical records.
Cases from other jurisdictions hold, as does Cwick v City of Rochester (supra), that no authority exists under applicable discovery rules for private interviews with plaintiffs physicians. In Garner v Ford Motor Co. (61 FRD 22), where the Federal District Court for Alaska construed the Federal Rules of Civil Procedure, the court rejected defendant’s argument that he was entitled to private interviews with plaintiffs’ doctors because plaintiffs had waived the physician-patient privilege by commencing a lawsuit. In Wenninger v Muesing (307 Minn 405), the Supreme Court of Minnesota examined that State’s discovery rules, the policy underlying them, and the policy underlying the physician-patient privilege, and concluded that private interviews would not be allowed. However, the Supreme Court of Alaska in Trans-World Inv. v Drobny (554 P2d 1148) and the Supreme Court of Montana in Callahan v Burton (157 Mont 513) have approved private interviews outside regular discovery procedures on the grounds that such interviews help uncover the truth, facilitate settlements, conserve judicial resources, and decrease litigation costs.
In the opinion of this court, the better rule denies defendant the right to question plaintiffs doctors outside formal discovery procedures. This State has always placed a high value on the physician-patient privilege, whose purpose "is to protect those who are required to consult physicians from the disclosure of secrets imparted to them, to protect the relationship of patient and physician and to prevent physicians from disclosing information which might result in humiliation, embarrassment or disgrace to patients.” (Steinberg v New York Life Ins. Co., 263 NY 45, 48-49.) While the courts of other States have severely questioned the value of the physician-patient privilege, an important factor leading to the result in Trans-World Inv. v Drobny (supra) and Callahan v Burton (supra), the New York Court of Appeals has not repudiated the rationale underlying the privilege (see, e.g., People v Al-Kanani, 33 NY2d *152 260). This court will not vitiate the privilege by sanctioning the private interview sought by defendants.
A patient has the right to expect that a doctor will be faithful to the oath of Hippocrates, which states in part: "Whatever in connection with my professional practice or not in connection with it, I may see or hear in the lives of men which ought not to be spoken abroad I will not divulge, as reckoning that all such should be kept secret.”
Although the Superior Court of Pennsylvania did not expressly allude to the oath, that court has strongly condemned a defendant’s unauthorized interview with a plaintiffs physician as being a breach of confidential relationship: "We do not consider the entire Ezickson matter as significant in this case, but we deem it advisable to briefly refer to our view of this incident. We are of the opinion that members of a profession, especially the medical profession, stand in a confidential or fiduciary capacity as to their patients. They owe their patients more than just medical care for which payment is exacted; there is a duty of total care; that includes and comprehends a duty to aid the patient in litigation, to render reports when necessary and to attend court when needed. That further includes a duty to refuse aflirmative assistance to the patient’s antagonist in litigation. The doctor, of course, owes a duty to conscience to speak the truth; he need, however, speak only at the proper time. Dr. Ezickson’s role in inducing Dr. Murtagh’s breach of his confidential relationship to his own patient is to be, and is, condemned.” (Alexander v Knight, 25 Pa D&C2d 649, 655, affd 197 Pa Super 79.)
A doctor who discloses his patient’s confidences without authority opens himself to a charge of professional misconduct. Section 6509 of the Education Law provides: "Each of the following is professional misconduct * * * (9) Committing unprofessional conduct, as defined by the board of regents in its rules”. Section 29.1 (subd [b], par [8]) of the Rules of the Board of Regents (8 NYCRR 29.1 [b] [8]) specifies as unprofessional conduct "revealing of personally identifiable facts, data or information obtained in a professional capacity without the prior consent of the patient or client, except as authorized or required by law”. In view of the serious consequences of a charge of professional misconduct, no doctor should disclose information about his patient absent express consent or court order.
In addition to charges of professional misconduct, a cause of *153 action exists against a doctor who without authority discloses his patient’s confidences (Doe v Roe, 93 Misc 2d 201; Felis v Greenberg, 51 Misc 2d 441; Clark v Geraci, 29 Misc 2d 791; Horne v Patton, 291 Ala 701; Schaffer v Spicer, 88 SD 36; Simonsen v Swenson, 104 Neb 224). A cause of action also exists against an insurer who, in the course of investigating a lawsuit, wrongfully induces a physician to disclose confidential information about a patient (Hammonds v Aetna Cas. & Sur. Co., 237 F Supp 96, rearg 243 F Supp 793; see Panko v Consolidated Mut. Ins. Co., 423 F2d 41). A rule against the private interviews obtained in the case at bar will reduce unnecessary lawsuits for wrongful disclosure against doctors and insurers.
To permit private interviews upon the service of a complaint would subject physicians to improper pressures to disclose. Thus, in Hammonds v Aetna Cas. & Sur. Co. (supra), a doctor was induced to release information about his patient on the insurer’s false representation that a malpractice action would be brought against him also. Moreover, a doctor who is himself insured by the same carrier that insures a defendant may wrongfully feel compelled to make improper disclosures to the carrier. Compliance with formal discovery procedures would insulate a physician against such improper pressures.
Even if no improper pressures were brought to bear on a physician, it would, nevertheless, often be difficult for the defense to determine on its own if and to what extent the physician-patient privilege was waived. Parties may be in substantial disagreement over the kinds of injuries put in issue by the pleadings (see, e.g., Watson v State of New York, 53 AD2d 798). Whether a physical or mental condition is in controversy often requires careful judicial scrutiny and not a mere cursory reading of the complaint (see, e.g., Koump v Smith, 25 NY2d 287) supra; Ideal Pub. Corp. v Creative Features, 59 AD2d 862). The determination of whether a medical condition is in controversy often requires specialized knowledge of the relevant factors which a court may look to in deciding a case, e.g., a custody contest (see, e.g., Perry v Fiumano, 61 AD2d 512). Innumerable other questions may arise concerning the waiver of the privilege (see, e.g., People v Al-Kanani, 33 NY2d 260, supra). By restricting disclosure to that obtainable pursuant to statute, court rule, or express consent, the patient’s attorney will be afforded an opportunity to object to the disclosure of medical information that is *154 remote, irrelevant, or otherwise improper, the court will be afforded an opportunity to regulate disclosure, and needless lawsuits for breach of confidence will be avoided.
Although the private interviews in the case at bar occurred prior to the formal exchange of medical records, the rationale of this decision is applicable to private interviews sought after such exchange. The adequacy of formal discovery procedures, the difficulty of determining what medical information is relevant, and the possibility of doctors or insurers becoming the object of lawsuits for unauthorized disclosure require that there be no private interviews without a patient’s express consent.