STATE of Missouri, ex rel. Robert E. **STUFFLEBAM, M.D., and Internal Medicine Associates of Springfield, Inc., Relators,**

v.

The Honorable J.A. APPELQUIST, Judge of the Circuit Court of Greene County, Missouri, Division 2, Respondent.

No. 13940.

Missouri Court of Appeals, Southern District, Division Two.

June 28, 1985.

Motion for Rehearing or to Transfer Denied July 19, 1985.

Application to Transfer Denied Sept. 10, 1985.

Robert W. Freeman, C. Bradford Cantwell, Freeman, Fredrick, Bennett, Rogers & Cantwell, P.C., Springfield, for relators.

Donald E. Woody, Monte P. Clithero, Daniel Schelp, Taylor, Stafford & Woody, Springfield, for respondent.

FLANIGAN, Judge.

The issue in this prohibition proceeding is: Are the attorneys for Robert E. Stufflebam, M.D., a defendant in the underlying medical malpractice action, entitled to obtain, by court order, an authorization from Gene Tefertiller, plaintiff in the malpractice action, permitting them to interview *privately* Dr. C. Norman Shealy, who is a physician who treated Tefertiller for the injuries which Tefertiller alleges were caused by Dr. Stufflebam, if Dr. Shealy consents to the interview?

For the reasons which follow, this court answers the question in the affirmative,

makes permanent its preliminary order in prohibition forbidding the entry of the intended order of the trial court denying the authorization and directs the trial court to order Tefertiller to execute and deliver the authorization.

One of the relators in this prohibition proceeding, Rule 97,[1] is Robert E. Stufflebam, M.D., who, together with his co-relator, is a defendant in the underlying medical malpractice action in which Tefertiller is one of the plaintiffs.[2] Respondent in this proceeding is Honorable J.A. Appelquist, Judge of Division 2 of the Circuit Court of Greene County, where the malpractice action is pending. Respondent's attorneys also represent Tefertiller in the malpractice action.

The parties have stipulated that Dr. C. Norman Shealy "is a physician who treated [Tefertiller] for the physical conditions which [Tefertiller] alleges were caused by [Robert E. Stufflebam, M.D., and the other relator]." The parties have also stipulated that this proceeding may be considered as one in prohibition or mandamus, a reasonable stipulation in light of the flexibility of the remedies as discussed in *St. Louis Lit-* *tle Rock Hosp. Inc. v. Gaertner,* 682 S.W.2d 146, 148–149 (Mo.App.1984).

During the pendency of the malpractice action in the circuit court, and after Tefertiller's physical condition had been placed in issue under the pleadings, the attorneys for Dr. Stufflebam sent to Tefertiller's attorneys a medical authorization, Exhibit 1, for execution by Tefertiller. Tefertiller refused to execute Exhibit 1 but did execute another medical authorization, Exhibit 2. Dr. Stufflebam's attorneys were not satisfied with Exhibit 2. On August 28, 1984, they filed a motion for an order compelling Tefertiller to execute a medical authorization, Exhibit 3. Pertinent portions of the three exhibits are set out below.[3]

On September 7, Judge Appelquist, having heard argument on the motion, informed counsel that he would, unless prohibited, enter an order on September 17 denying the motion. Relators then instituted this prohibition proceeding and this court issued its preliminary order prohibiting that entry.

Section 491.060, the statute which creates the physician-patient privilege, reads, in pertinent part:

1. Unless otherwise indicated, all references to rules are to Missouri Rules of Court, V.A.M.R., and all references to statutes are to RSMo 1978, V.A.M.S.

2. The other plaintiff is Ann Tefertiller who seeks damages on her derivative claim as the wife of Gene Tefertiller.

3. All three of the medical authorizations were directed to Dr. Shealy and called for the signature and acknowledgment of Tefertiller. Each described the information and records sought as those "concerning Gene E. Tefertiller with respect to any illness, physical or mental condition or injuries, medical consultations, prescriptions, or treatments, x-ray plates, and copies of all hospital or medical records which reasonably relate to any of the injuries and aggravations claimed to have been sustained by Gene E. Tefertiller in [the malpractice action, the style of which was stated]." The quoted language will be referred to as "the information sought" in the following summaries of the three exhibits.

EXHIBIT 1
MEDICAL AUTHORIZATION
"I hereby request and authorize you to furnish to and discuss with [Dr. Stufflebam's attorneys] any and all information and records you have concerning [the information sought.]
. . ."

EXHIBIT 2
MEDICAL AUTHORIZATION
"I hereby request and authorize you to furnish to [Dr. Stufflebam's attorneys] any and all written information and medical records you have in your files concerning [the information sought].
. . ."
THIS AUTHORIZATION IS NOT INTENDED TO PERMIT ANY ORAL DISCUSSIONS BUT ONLY AUTHORIZES THE RELEASE OF THE AFOREMENTIONED WRITTEN RECORDS.
. . ."

EXHIBIT 3
MEDICAL AUTHORIZATION
"I hereby authorize you to furnish and discuss with [Dr. Stufflebam's attorneys] any and all information and records you have concerning [the information sought].
This medical authorization does not require you to engage in discussions with [Dr. Stufflebam's attorneys]; however, it does permit such discussions if you so desire.
. . ."

The following persons shall be incompetent to testify:

.    .    .    .    .

(5) a physician or surgeon, concerning any information which he may have acquired from any patient while attending him in a professional character, and which information was necessary to enable him to prescribe for such patient as a physician, or do any act for him as a surgeon.

■ The physician-patient privilege did not exist at common law, *State ex rel. McNutt v. Keet*, 432 S.W.2d 597, 600 (Mo. banc 1968); *State ex rel. Husgen v. Stussie*, 617 S.W.2d 414, 415 (Mo.App.1981), and it has "no constitutional underpinnings," *State v. Carter*, 641 S.W.2d 54, 59 (Mo. banc 1982). The statutory privilege is that of the patient, and not of the physician, and it may be waived by the patient. "[O]nce the matter of plaintiff's physical condition is in issue under the pleadings, plaintiff will be considered to have waived the privilege under § 491.060(5) so far as information from doctors or medical and hospital records bearing on that issue is concerned." *McNutt*, supra, at 601.

Even when the physician-patient privilege has been waived by a party seeking recovery for personal injuries, some restrictions remain on the scope of medical discovery. In *McNutt* the Supreme Court said, at 602:

Nothing we say herein deprives the trial court of its authority to issue protective orders under [Rule 56.01(c)], upon proper showing, limiting the production of such records to those which reasonably relate to the injuries and aggravations claimed by the plaintiffs in the present suit. The waiver which we today recognize does not mean that it automatically extends to every doctor or hospital record a party has had from birth regardless of the bearing or lack of bearing, as may be, on the matters in issue.

In *McNutt*, a mandamus proceeding, the Supreme Court, after ruling the records discoverable, stated that if a medical authorization from the patient was required, the trial judge should order the plaintiff to execute the authorization. This court has denied relief by prohibition where the requested authorization was "overly broad." *State ex rel. DeGraffenreid v. Keet*, 619 S.W.2d 873 (Mo.App.1981).

■ A physician occupies a fiduciary relationship with respect to his patient. *Moore v. Webb*, 345 S.W.2d 239, 243 (Mo. App.1961). Notwithstanding *McNutt*, a physician occupies a position of trust and confidence with respect to his patient. *State ex rel. McCloud v. Seier*, 567 S.W.2d 127, 128 (Mo. banc 1978). "It is his duty to act with the utmost good faith. This duty of the physician flows from the relationship with his patient and is fixed by law." *McCloud*, supra, at 128.

■ Waiver of the physician-patient privilege does not terminate all effects of the physician-patient relationship. Thus it does not follow from the waiver that the physician becomes "equally available" to the patient and his tort adversary, and in a proper case the latter may comment upon the failure of the patient to call the physician as a witness. *Gridley v. Johnson*, 476 S.W.2d 475 (Mo.1972). Another effect of the relationship which survives the waiver of the statutory privilege is the ineligibility (under Rule 60) of the physician to be named, at the request of a tort defendant in a personal injury action, to examine the plaintiff-patient who objects to such examination. *McCloud*, supra. Nevertheless, Missouri cases have pointed out that the object of a civil trial is to get at the truth, *McNutt*, supra, at 602; *State ex rel. Gray v. O'Leary*, 602 S.W.2d 473, 477 (Mo.App. 1980); *State v. Carter*, supra, at 58, and the physician-patient privilege, after its waiver, is not to be used for suppressing truth. *State v. Carter*, supra, at 59.

The excellent brief of respondent advances several arguments in support of respondent's contention that Tefertiller should not be required to execute Exhibit 3 and deliver it to Dr. Stufflebam's attorneys. Respondent argues that Rule 56.-

01(a) enumerates the methods of discovery and contains no provision authorizing or compelling the use of ex parte conferences between a witness and counsel representing only one side. Respondent argues that Exhibit 3 should be amended by striking the words "and discuss with" from the first paragraph and striking all of the second paragraph. If Dr. Stufflebam's attorneys are furnished with the exhibit as amended, the argument goes, the formal methods of discovery, authorized by Rule 56, are available to relators.

■ Respondent says he does not base his proposed order on the theory that Dr. Shealy is an expert as that term is used in Rule 56.01(b)(4), which restricts discovery with respect to facts known and opinions held by experts which are otherwise available and which are acquired or developed in anticipation of litigation or for trial.[4] It is respondent's position that the fiduciary relationship between Tefertiller and Dr. Shealy precludes the ex parte conference.

Respondent's brief says:

For its ethical guidelines, the Missouri State Medical Association has adopted the American Medical Association *Principles of Medical Ethics.* Principle IV provides, as follows:

A physician shall respect the rights of patients, of colleagues, and of other health professionals, *and shall safeguard patient confidences within the constraints of the law.* (Emphasis added.)

Further, Section 5.05 of the Current Opinions of the Judicial Council of the American Medical Association (1984), provides as follows:

*CONFIDENTIALITY.* The information disclosed to a physician during the course of the relationship between physician and patient is confidential to the greatest possible degree. The patient should feel free to make a full disclosure of information to the physician in order that the physician may most effectively provide needed services. The patient should be able to make this disclosure with the knowledge that the physician will respect the confidential nature of the communication. The physician should not reveal confidential communications or information without the express consent of the patient, unless required to do so by law. Thus, [Tefertiller's] treating physicians are ethically under a duty to refrain from disclosing [Tefertiller's] confidences, unless required to do so by law.

Respondent states that Tefertiller has previously consented, and still consents, to permit Stufflebam's attorneys to engage in a non-recorded face-to-face interview with Dr. Shealy if Tefertiller's counsel is present and if Dr. Shealy so agrees. This arrangement would be "cost-efficient" and would permit adequate preparation by Dr. Stufflebam's attorneys and would also preserve the fiduciary relationship. The presence of Tefertiller's counsel would "impose a check to insure that relators do not inquire as to information to which [Tefertiller] has not waived the physician-patient privilege."

Respondent also argues that if an ex parte conference is permitted, Dr. Shealy would be subjected to the possibility that Dr. Stufflebam's attorneys "would exert undue pressure upon [Dr. Shealy] in an attempt to influence [his] testimony." Re-

**4.** Rule 26(b)(4) of the Federal Rules of Civil Procedure is the counterpart of Rule 56.-01(b)(4). A treating physician of a patient whose physical condition is in issue is not an expert within the meaning of the federal rule. *Rodrigues v. Hrinda,* 56 F.R.D. 11 (D.Pa.1972). See also Wright & Miller, Federal Practice and Procedure, § 2237 at 692–693.

In *Congrove v. St. Louis S.F. Ry. Co.,* 77 F.R.D. 503 (D.Mo.1978), plaintiff filed a notice to take the deposition of V.W. Hollo, M.D., who was the chief medical consultant of the defendant rail-

road. Judge Elmo B. Hunter held that Federal Rule 26(b)(4)(C) did not require plaintiff to pay an expert's witness fee prior to taking the deposition of Dr. Hollo. At p. 504 Judge Hunter said: "Defendant does not contend that Dr. Hollo developed his expert opinions relevant to this suit 'in anticipation of litigation or for trial.' In fact, defendant's motion indicates that, on the contrary, Dr. Hollo's value as an expert witness stems from his being 'an actor or viewer with respect to transactions or occurrences that are part of the subject matter of the lawsuit.'"

spondent says that if defense counsel are limited to proceeding by formal discovery, a lawsuit for breach of confidence may be avoided.[5]

Respondent further argues that if relators obtain a physical examination of Tefertiller pursuant to Rule 60, Tefertiller's counsel could not interview privately the examining physician in view of Rule 56.-01(b)(4). Finally, respondent argues that the possible loss of a tactical advantage to Stufflebam's attorneys by not allowing private interviews does not justify a breach of Tefertiller's right of privacy.

Cases lending support to respondent's contention that Dr. Stufflebam's attorneys should not be permitted to have a private interview with Dr. Shealy, even if Dr. Shealy is willing and even though Tefertiller has waived the privilege, include the following: *Hammonds v. Aetna Casualty & Surety Co.*, 243 F.Supp. 793 (D.Ohio 1965); *Weaver v. Mann*, 90 F.R.D. 443 (D.N.D. 1981); *Garner v. Ford Motor Co.*, 61 F.R.D. 22 (D.Alaska 1973); *Mull v. String*, 448 So.2d 952 (Alabama 1984); *Wenninger v. Muesing*, 307 Minn. 405, 240 N.W.2d 333 (1976); *Jaap v. District Court of 8th Judicial District*, 623 P.2d 1389 (Montana 1981); *Anker v. Brodnitz*, 98 Misc.2d 148, 413 N.Y.S.2d 582 (1979), *aff'd* 73 App. Div.2d 589, 422 N.Y.S.2d 887; and *Alexander v. Knight*, 197 Pa.Super 79, 177 A.2d 142 (1962).

*Garner*, *Jaap* and *Alexander* were personal injury actions. *Anker*, *Wenninger* and *Weaver* were medical malpractice actions. *Hammonds* was a suit against an insurance company for improperly inducing the breach of plaintiff's confidential relationship with his attending physician. *Mull* was a suit against the treating physician for breach of his confidential relationship with the plaintiff-patient.. All except *Mull* arose in jurisdictions having a statute creating a physician-patient privilege. In

*Garner, Jaap, Anker* and *Weaver* the privilege had been waived. In all of them, *Mull* by dictum, ex parte interviews of the treating physician by counsel for the adversary of the patient were condemned and denied. In *Garner, Jaap, Anker, Wenninger* and *Weaver* the court stated that access to information possessed by the treating physician was controlled by the rules pertaining to formal discovery.

In *Anker* the court quoted the following portion of the oath of Hippocrates:

> Whatever in connection with my professional practice or not in connection with it, I may see or hear in the lives of men which ought not to be spoken abroad I will not divulge, as reckoning that all such should be kept secret.

The court in *Hammonds* also alluded to that oath.

Cases lending support to Dr. Stufflebam's contention that his attorneys, in light of Tefertiller's waiver of the physician-patient privilege, should be permitted to have a private interview with Dr. Shealy, if Dr. Shealy agrees to that interview, include the following: *Arctic Motor Freight, Inc. v. Stover*, 571 P.2d 1006 (Alaska 1977); *Trans-World Investments v. Drobny*, 554 P.2d 1148 (Alaska 1976); *Coralluzzo v. Fass*, 450 So.2d 858 (Fla.1984); *Gailitis v. Bassett*, 5 Mich.App. 382, 146 N.W.2d 708 (1966); *Lazorick v. Brown*, 195 N.J.Super. 444, 480 A.2d 223 (1984); and see especially *Doe v. Eli Lilly & Company, Inc.*, 99 F.R.D. 126 (D.D.C.1983). See also *Lind v. Canada Dry Corp.*, 283 F.Supp. 861 (D.Minn.1968).[6]

*Lazorick, Gailitis* and *Coralluzzo* were medical malpractice actions and *Arctic, Trans-World Investments* and *Doe* were personal injury actions. In *Coralluzzo* there was no state statute creating a physician-patient privilege but such a statute existed in *Lazorick, Arctic, Trans-World Investments, Gailitis* and *Doe*. In the lat-

---

**5.** See 20 A.L.R.3d 1109—Physician's tort liability, apart from defamation, for unauthorized disclosure of confidential information about patient.

**6.** The instant issue is one of first impression in Missouri. It has, however, received discussion in Sterchi and Sheppard, Defendant's Right to Secure Medical Information and Records Concerning Plaintiff, 53 UMKC L.Rev. 46, 50 (1984).

ter cases the privilege had been waived. In all of them ex parte interviews of the treating physician by counsel for the adversary of the patient were permitted and in some instances encouraged.

The following language appears in *Doe,* at 128:

As a general proposition, however, no party to litigation has anything resembling a proprietary right to any witness's evidence. Absent a privilege no party is entitled to restrict an opponent's access to a witness, however partial or important to him, by insisting upon some notion of allegiance. See *International Business Machines Corp. v. Edelstein,* 526 F.2d 37, 41–44 (2d Cir.1975); *Gregory v. United States,* 369 F.2d 185, 187–188 (D.C.Cir.1966); *Edmund J. Flynn Co. v. LaVay,* 431 A.2d 543, 551 (D.C. 1981); 8 J. Wigmore, Evidence § 2192 (McNaughton rev. ed. 1961). Even an expert whose knowledge has been purchased cannot be silenced by the party who is paying him on that ground alone. Unless impeded by privilege an adversary may inquire, in advance of trial, by any lawful manner to learn what any witness knows if other appropriate conditions the witness alone may impose are satisfied, e.g., compensation for his time and expertise or payment of reasonable expenses involved, and while the Federal Rules of Civil Procedure have provided certain specific formal methods of acquiring evidence from recalcitrant sources by compulsion, they have never been though to preclude the use of such venerable, if informal, discovery techniques as the ex parte interview of a witness who is willing to speak. *Hickman v. Taylor,* 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947); see *International Business Machines Corp. v. Edelstein,* 526 F.2d at 43–44; cf. *Gregory v. United States,* 369 F.2d at 187–88;

*Trans-World Investments v. Drobny,* 554 P.2d 1148, 1151–52 (Alaska 1976).

There is nothing in the instant record to create any suspicion that an ex parte interview between Dr. Shealy and Dr. Stufflebam's attorneys, if Dr. Shealy agrees to the interview, would not be held within the bounds of proper discovery as delineated in *McNutt,* supra. To assume otherwise is to denigrate the integrity of their respective professions. Any issue of ethical propriety should not hinge solely on the presence or absence of the patient's counsel.[7]

■ An interview of a witness is less costly than a deposition and is easier to schedule. "It is conducive to spontaneity and candor in a way depositions can never be; and it is a cost-efficient means of eliminating non-essential witnesses from the list completely." *Doe,* supra, at 128. Tefertiller's attorneys have the right to seek a private interview with Dr. Shealy and no sound reason appears for denying the same right to defense counsel. It is also arguable that permitting one attorney to overhear his opponent's interrogation of a witness might invade the work product of the opponent and lay bare matters of trial strategy and mental impressions or legal theories of the opponent.

■ All of the conflicting arguments become academic, of course, if Dr. Shealy, for reasons of his own, sees fit to deny a request by defense counsel for an ex parte interview. The trial court has no authority to compel Dr. Shealy to grant such an interview.

This court concludes that respondent would exceed his jurisdiction by denying relators' motion for an order compelling Tefertiller to execute Exhibit 3 and deliver it to Dr. Stufflebam's attorneys. Respondent is hereby ordered to sustain said motion.

7. Although respondent's brief interprets § 5.05 of the Current Opinions of the Judicial Council of the American Medical Association to mean that Dr. Shealy is under a duty to refrain from disclosing Tefertiller's confidences "unless re-

quired to do so by law," it should be observed that § 5.05 conditions that duty upon a lack of "the express consent of the patient." Exhibit 3 contains that consent.

HOGAN, P.J., concurs (concurring opinion filed).

TITUS, J., concurs.

HOGAN, Presiding Judge, concurring:

I concur in the scholarly principal opinion, but would have it made clear that a mere "court order" affords no shield whatever to the physician being interviewed from a later action to recover damages on account of breach of any residual or newly-created physician-patient privilege. The physician who grants the interview is still "on his own," so to speak, in determining whether the scope of the questions asked by the interviewer is so extensive as to require him to expose himself to liability. Therefore, I would emphasize that a decision to grant an interview is not without risk, and must be strictly voluntary.