HIGHWAY INS. UNDERWRITERS
v. DEMPSEY.

No. 6043.

Court of Civil Appeals of Texas. Amarillo.

April 17, 1950.

Rehearing Denied May 22, 1950.

Strasburger, Price, Holland, Kelton & Miller, Dallas, for appellant.

Bob Huff, Lamesa, R. H. Munsterman, Levelland, for appellee.

LUMPKIN, Justice.

This is a workman's compensation case. The appellee, J. T. Dempsey, was the employee. The appellant, Highway Insurance Underwriters, was the compensation insurance carrier, and R. B. Morse was the employer.

On November 5, 1948, the appellee was assisting in moving an oil derrick along a highway in Hockley County, Texas. While he was riding on top of the derrick, it struck a high voltage power line. An electric current shot through the appellee's body and caused multiple burns. The appellee alleged that from this accident he sustained personal injuries which incapacitated him totally and permanently. The appellant pleaded a general denial, partial and temporary incapacity and, especially answering the appellee, the appellant alleged that this is a specific injury case—that is, appellee's permanent incapacity is confined to specific members of his body. The appellee's medical expert testified that appellee is totally and permanently incapacitated, while the appellant's medical experts stated that the permanent partial disability suffered by the appellee is confined to his hands, arms and legs. The jury, in response to special issues, found that the appellee had suffered a permanent partial incapacity to his hands, arms and legs as a result of the accident. However, the jury further found that the incapacity was not confined to appellee's hands, arms and legs but that he had suffered a total incapacity for 104 weeks followed by a permanent partial incapacity of 75%. Since the parties had stipulated that the appellee's average weekly wage, prior to the accident, was $66.13, the trial court, in accordance with the verdict, rendered judgment whereby the appellee would recover $25 per week from the appellant for 377 weeks, beginning April 22, 1949. However, since the appellant had paid the appellee $25 per week for 24 weeks, beginning November 5, 1948, the date of the accident, the trial court gave the appellant credit for this amount. From this judgment the appellant duly excepted and gave notice of appeal.

The appellant contends the court erred in not granting a new trial because of the improper argument of counsel for appellee. As shown by the approved bill of exception, the appellee's counsel, Mr. Huff, said to the jury:

"Mr. Huff: Gentlemen of the Jury, if he's gone eleven months, there is no doubt in my mind that it's permanent, and just use this when you start reading. Why would a good workman—I mean, not one witness, don't you know this expert lawyer and those insurance adjusters they have, don't you know if there had been anything come out here that wasn't so, they would have fifty witnesses up here to say it wasn't? Why, we run witnesses up here, a dozen of them, and not a one but what testified that he was a good worker.

"Mr. Martin: [appellant's counsel] We object to that argument and move the court to instruct the jury not to consider it because it implies that there were witnesses on some point or other, I don't know what he is talking about, that were not brought here that were available to the defendant, and ask the court to so instruct the jury.

"The Court: What particular part are you talking about now?

"Mr. Martin: The argument just made.

"The Court: I instruct the jury not to consider the argument for any purpose whatever.

"Mr. Huff: Gentlemen of the Jury, my argument to you is that if he was a deadbeat, don't you know, don't you know, that they would have had somebody that said he was?"

It is the appellant's contention that under the medical testimony the jury could have returned a verdict providing less compensation than the verdict which the jury did return; that counsel for appellee was arguing that appellant had witnesses whom it did not produce because they would not contradict the appellee's theory of the case; and that the jury's verdict was for a greater compensation that it would have been if appellee's counsel had not made the statements which he did make.

In qualifying the appellant's bill of exception, the trial court ordered counsel's entire argument entered in the statement of facts. Read in context, the remarks complained of by appellant reveal that counsel was discussing whether the appellee's incapacity was temporary or permanent. Counsel stated that there was no doubt in his mind that appellee's incapacity was permanent. Then, counsel abruptly changed the subject and spoke of the appellee as a

good workman and stated that if appellee were not a good workman, the appellant could have produced fifty witnesses to testify to the contrary.

Elsewhere in the record the appellant's counsel admits the accident upon which the appellee's cause of action was predicated; he admits that the appellee was injured in the accident and in the course of his employment. The only issue before the court was the extent of appellee's injuries, which all the physicians testified are serious. Although several witnesses testified that the appellee was a good, dependable workman, the question was not an issue in the case. In our opinion the appellant suffered no injury by reason of Mr. Huff's first remark, and if there was any injury, it was cured by the trial court's instruction.

After the court's instruction, however, Mr. Huff continued to speak in the same vein. He pointed out that if the appellee was a dead-beat, the appellant would have had some one to testify to that effect. This is merely a restatement of the testimony of one of the witnesses who characterized the appellee as a "good hand, dependable and quick and reliable on his work." This portion of counsel's argument was principally an assertion of the excellent qualities of his client—an argument which, we believe, the ordinary jury can be trusted to treat objectively. Undoubtedly, under the holdings of our courts, no error would have existed if the trial court had again instructed the jury not to consider counsel's remarks. However, the appellant did not object to counsel's further argument, and the court did not instruct the jury not to consider it. Nevertheless, in our opinion, the appellant suffered no injury by reason of counsel's eulogy of his client. Ramirez v. Acker, 134 Tex. 647, 138 S.W.2d 1054; King v. Federal Underwriters Exchange, 144 Tex. 531, 191 S.W. 2d 855.

Next, the appellant assigns as error the action of the trial court in permitting the appellee to prove that the appellant owed its witness, Dr. Dupre, several thousand dollars, including three thousand dollars for his services to appellee following the accident. The appellant contends that this testimony was improper, inflammatory, prejudicial and entirely irrelevant to any issue in the case.

Over appellant's objection, Dr. Dupre, appellant's medical witness, on cross-examination testified that he had had extensive business dealings with the appellant and that the appellant owed him about five or six thousand dollars, including his fee for treating the appellee. Dr. Dupre further testified that he had filed a pleading seeking to establish a lien in the approximate amount of $3,000 against any sum the appellee might possibly recover in this lawsuit. The appellee contends that this evidence was admissible on two grounds: (a) to show the bias Dr. Dupre has in favor of the appellant; and (b) to show Dr. Dupre's interest in the case.

Our courts have held on numerous occasions that "it is competent, on the cross-examination of a witness, to elicit facts which tend to show the bias, prejudice, or friendship of the witness for the party for whom he testifies, and to show hostility toward the party against whom he is called." 58 American Jurisprudence 386. The appellee was attempting to do no more than to show that Dr. Dupre had an interest in the result of the trial or, at least, to show that he had a connection with the appellant which, unconsciously or otherwise, could materially affect the weight to be given his testimony.

The appellant contends that the court erred in permitting the appellee to argue to the jury the fact that the appellant owed Dr. Dupre a fee of $3,000 for treating the appellee. Appellee's counsel was discussing the medical testimony in this case when he said: "But I want you to keep this fact in mind when you start weighing this credible evidence." Mr. Huff then made the statement contained in the appellant's bill of exception: "Dr. Dupre said this outfit owed him several thousand dollars. He said that on this very case they owed him right at $3,000, and they had waited nearly eleven months to pay him." Counsel continued with this statement: "Now you,

Gentlemen of the Jury can make your own deductions, and you're not supposed to be classed as a bunch of morons. That insurance company, don't you imagine that they've got a reason for waiting eleven months to pay that doctor bill? They want to see, don't you imagine, how he is going to testify."

Later in his argument counsel said: "My idea in bringing it to you, Gentlemen of the Jury, is that $3,000 isn't hay anymore, and that doctor wants to collect his money. He's not crazy. He wants to get his money out of this insurance company, and he doesn't want to face them and have to say, 'Well, you hurt us on the stand.' He doesn't want that. You fellows are smart enough to know that."

■■■ In discussing the scope of the argument of counsel to the jury, the Supreme Court in Ex parte Fisher, 146 Tex. 328, 206 S.W.2d 1000, 1005, made this observation: "Great latitude is allowed counsel in discussing the facts and issues. Counsel are permitted to show the environments of the case; they may comment upon the bias or interests of the parties and witnesses, and may discuss the reasonableness or unreasonableness of the evidence and its probative effect or lack of probative effect * * *."

The appellant did not object to this portion of the argument at the time it was made. Counsel's argument was not improper.

The appellant's last two points of error are likewise concerned with portions of the argument of appellee's counsel. In the first of these, counsel was arguing to the jury the question of the extent of appellee's disability, and he stated that the appellant paid the appellee compensation for 24 weeks before stopping the payments. Then counsel said: "All right. To go back twenty-four weeks, then they, by their actions, they say, 'Well, that's all we owe,' and then he goes and gets an attorney and is criticized for bringing this total case in here. No, Gentlemen of the Jury, you're not going to be hoodwinked."

Later, in speaking of the arguments which were to follow his, counsel for the appellee said: "And I'm sure you're going to be favored with some fine speeches, and give those gentlemen your undivided attention, but don't let them get you off on the main issue, and when they start driving your way, just remember in your mind that November 5th, when he was struck down out there, a laboring man hit just like a soldier on the field of battle; doing what he was paid to do, working to make a living for that good mother. Don't be pulled off with that kind of shim-sham."

■■■ No objection was urged to either portion of the argument at the time it was made. It is contended by the appellant that the argument was so prejudicial and inflammatory that no objection was necessary. We do not regard the argument to be of such a nature as to demand a reversal of the case. What constitutes inflammatory argument is dependent entirely upon the facts of the case. Benson v. Missouri, K. & T. R. Co., Tex.Civ.App., 200 S.W.2d 233, writ ref. n. r. e.

In our opinion neither the term "hoodwinked" nor the word "shim-sham," when read in connection with counsel's entire argument, is to be interpreted to mean that appellee was charging counsel for the appellant with bad faith or improper conduct. Counsel's remarks were no reflection upon the honesty and integrity of those who represent the appellant. Rather, they were the expression of a deep and probably a well founded sense of fear on the part of appellee's counsel concerning the argument which was to follow. Counsel was doing no more than warning the jury that the testimony, in his opinion, would not support the appellant's theory of the case. Taken as a whole, the argument is not of such a character as, in our opinion, would warrant a reversal of the case, especially since appellant failed to object to the argument at the time it was made. Meaders v. Moore, Tex.Civ.App., 113 S.W.2d 689, affirmed 134 Tex. 127, 132 S.W.2d 256, 125 A.L.R. 817; Pacific Employers Ins. Co. v. Gage, Tex.Civ.App., 199 S.W.2d 537, writ ref. n. r. e.

In Humphreys v. Roberson, 125 Tex. 558, 83 S.W.2d 311, the Supreme Court laid down the rule that reversal will not follow

where it clearly appears that no injury could have resulted from the argument. In this case the appellee pleaded that as a result of the personal injuries sustained in the accident, he was totally and permanently incapacitated; and Dr. Sandifer, his witness, so testified. The appellant's two medical witnesses did not consider the appellee's injury that extensive. The testimony would have warranted a finding of total and permanent incapacity, but the jury fixed the appellee's incapacity for 104 weeks and determined that his permanent partial incapacity amounted to 75%. From this action on the part of the jury, we believe it is clear that no injury to appellant resulted from the various portions of appellee's argument objected to by the appellant. Carson v. Amberson, Tex.Civ.App., 148 S.W.2d 972, dism. judg. cor.; King v. Federal Underwriters Exchange, supra.

In our opinion the record in this case fails to show reversible error. All of the appellant's points of error are overruled, and the judgment of the trial court is affirmed.