**STATE of Missouri, ex rel. Joseph LICHTOR, M.D., Relator,**

v.

**Honorable Thomas C. CLARK, Judge, Division III, Circuit Court of Jackson County, Missouri, Respondent.**

**No. WD 46445.**

Missouri Court of Appeals, Western District.

Dec. 29, 1992.

Motion for Rehearing and/or Transfer to Supreme Court Denied Dec. 22, 1992.

Paul Hasty, Jr., Wallace, Saunders, Austin, Brown and Enochs, Chtd., Kansas City, for intervenor.

William H. Seaton, Robert K. Ball, II, Kansas City, for respondent.

Before SHANGLER, P.J., and BERREY and SMART, JJ.

SMART, Judge.

This case involves the issue of the degree of trial court control over the right of a defendant in a personal injury case to have the plaintiff examined by a physician of defendant's choice.

The underlying case is a personal injury case pending before the Honorable Thomas C. Clark, respondent. Plaintiff is Marcus Williams. Defendants are Harold Margolin, an uninsured motorist, and Casualty Reciprocal Exchange, plaintiff's uninsured motorist carrier. There is a dispute between plaintiff and defendants as to the nature and extent of plaintiff's injuries. Defendant Casualty Reciprocal Exchange ("Casualty") named as its proposed medical expert Joseph Lichtor, M.D., and requested that plaintiff submit to an examination by Dr. Lichtor. Plaintiff refused to be examined by Dr. Lichtor, objecting to Dr. Lichtor's "fitness" to serve as defendant's examining witness. Defendant Casualty then sought an order under Rule 60.01 that plaintiff submit to an examination by Dr. Lichtor. Defendant's motion was opposed by plaintiff, who concurrently issued a notice of deposition, and served on Dr. Lichtor and his office records custodian deposition subpoenas duces tecum pursuant to Rule 57.09, seeking production of various documents related to Dr. Lichtor's income and finances, his professional practice, and his professional association with the firm of Wallace, Saunders, Austin, Brown and Enochs (which is representing Casualty in this case). The subpoenas sought Dr. Lichtor's financial records, his income tax returns, records of billings for consultation and testimony, and other items. Defendant Casualty moved to quash the subpoenas, contending that the proposed discovery was not authorized by law. On January 3, 1992, respondent entered an order sustaining the motion to compel plaintiff to submit to a physical examination by Dr. Lichtor, but indicating that the court was reserving judgment as to whether Dr. Lichtor would be permitted to testify. Respondent also denied the motion to quash the deposition subpoenas and directed that the depositions proceed forthwith. Plaintiff again gave notice of his proposal to take the deposition of Dr. Lichtor. Defendant thereupon filed a motion for protective order, alleging that Dr. Lichtor had a scheduling conflict with the date proposed for the deposition. Defendant Casualty also sought a ruling that Dr. Lichtor be compensated at the rate of $300.00 per hour for his time in giving deposition testimony. Fol-

lowing a hearing, by order dated June 15, 1992, the trial court directed that the deposition of Dr. Lichtor proceed, and named James S. Stubbs, Esq., as special master to supervise the deposition. The court's order specified that the failure of Dr. Lichtor to appear and comply with the subpoena duces tecum "may result" in his disqualification as the "independent medical expert." The court further ordered that Dr. Lichtor and the special master were each to be compensated at the rate of $85.00 per hour.

Dr. Lichtor thereupon sought a writ of prohibition from this court challenging the authority of the trial court to issue the order directing the discovery in question. A preliminary order in prohibition was issued on June 30, 1992. Defendant Casualty sought and was allowed leave to intervene.

### Trial Court Authority in Discovery Matters

■ The trial court is allowed broad discretion in the control and management of discovery. *State ex rel. Metro. Transp. Services, Inc. v. Meyers*, 800 S.W.2d 474, 476 (Mo.App.1990). It is only for an abuse of discretion amounting to an injustice that the appellate courts will interfere. *Great Western Trading Company v. Mercantile Trust Co.*, 661 S.W.2d 40, 43 (Mo.App. 1983). "A trial court abuses its discretion when its ruling is clearly against the logic of the circumstances then before the court and so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration." *Meyers*, 800 S.W.2d at 476.

■ Prohibition is the proper remedy when a trial court has abused its discretion in a discovery order to the extent that its act exceeds its jurisdiction. *State ex rel. Whitacre v. Ladd*, 701 S.W.2d 796, 797 (Mo.App.1985). In this prohibition proceeding, the burden is on Dr. Lichtor as the petitioning party to show that Judge Clark exceeded his jurisdiction, and that burden includes overcoming the presumption of right action in favor of Judge Clark's ruling. *State ex rel. Vanderpool Feed &* *Supply Co. v. Sloan*, 628 S.W.2d 414, 416 (Mo.App.1982).

### Authority of Trial Judge as to Expert Testimony

■ Missouri trial courts have long been authorized, even prior to the adoption of rules of civil procedure, to order the physical examination of a plaintiff in order to allow the fact finder to have the benefit of the findings and observations of a physician not retained by plaintiff. *State ex rel. American Mfg. Co. v. Anderson*, 270 Mo. 533, 194 S.W. 268 (Mo. banc 1917). Trial judges have discretion to determine whether the experiential qualifications of the proposed examiner are sufficient. *State ex rel. McCloud v. Seier*, 567 S.W.2d 127 (Mo. 1978). Customarily, the defendant suggests the physician to examine a claimant under Rule 60.01, but the actual approval of the physician is a matter for the discretion of the trial court. *State ex rel. McCloud v. Seier*, 567 S.W.2d 127 (Mo. 1978); *State ex rel. Metropolitan Trans. Services v. Meyers*, 800 S.W.2d 474 (Mo. App.1990); *Hoffman v. Illinois Terminal R.R. Co.*, 274 S.W.2d 591 (Mo.App.1955); *See* Annot., 33 ALR3rd 1012 (1970).

■ The key to the authority of the trial judge, whether under Rule 60.01 or independent of the rule, is the judge's right and duty to determine whether the proposed expert testimony will be helpful to the fact finder. *Salem v. United States Lines Co.*, 370 U.S. 31, 35, 82 S.Ct. 1119, 1122, 8 L.Ed.2d 313 (1962); *Gideon v. Johns–Manville Sales Corp.*, 761 F.2d 1129, 1135 (5th Cir.1985). Section 490.065 RSMo 1986 (1992 Supp.) reads, in pertinent part:

> In any civil action, if scientific, technical or other specialized knowledge *will assist the trier of fact to understand the evidence or to determine a fact in issue*, a witness qualified as an expert ... may testify thereto in the form of an opinion or otherwise. (emphasis added)

There is no absolute right of a party to present expert testimony on any subject the party desires, and no absolute right to present testimony by any expert a party

desires. *State ex rel. McCloud v. Seier,* 567 S.W.2d 127 (Mo.1978); *State ex rel. Metrop. Trans. Serv. v. Meyers,* 800 S.W.2d 474 (Mo.App.1990). In *Meyers,* the trial court denied the request of defendant that Dr. Lichtor examine plaintiff, and did so without stating any reason for the denial. This court, reviewing the action of the trial court, stated:

> The court's decision not to permit Dr. Lichtor to conduct the examination and to permit the examination by any other qualified physician may be based in bias or sound logic. This court has no way of knowing which. Absent a stated legal reason, the trial court's decision appears arbitrary and capricious, indicates a lack of careful consideration, and is unreasonable.

800 S.W.2d at 476.

The clear implication of *Meyers* is that the trial court, for adequate legal reason, may preclude a physician from serving as the examining physician for defendant. This implication is consistent with the notion of the "inherent" authority of a trial court to conduct inquiries necessary to a full and fair adjudication. In *State ex rel. American Mfg. Co. v. Anderson,* 270 Mo. 533, 194 S.W. 268 (Mo. banc 1917), the Missouri Supreme Court examined the authority of a trial court to order a defendant to allow the plaintiff to enter upon defendant's premises with engineers and photographers for the purpose of gathering evidence. At that time, there was no rule or statutory authority for such an order. Counsel for defendant argued that although the circuit courts are courts of original general jurisdiction, with authority derived from the common law of England, the provisions of the federal and state constitutions limit the authority of our circuit courts to the powers granted by the legislature. The court rejected this argument, holding that the circuit courts have inherent authority to order access to defendant's premises and that the constitutional provisions only prohibit *unreasonable* searches and seizures. The court also noticed that the inherent authority of the court to order the physical examination of a plaintiff complaining of personal injuries was already

well established and recognized in the law. *Shepard v. Mo. Pacific Railway Co.,* 85 Mo. 629, 55 Am.Rep. 370 (1885); *Owens v. Kansas City, St. Joseph and C.B. Ry. Co.,* 95 Mo. 169, 8 S.W. 350 (1888). The court concluded that "our circuit courts being courts of original and general jurisdiction, fashioned, as to jurisdiction and procedure, by the adoption of the common law, after the English courts, they likewise must have the same inherent authority to make and enforce such orders." 194 S.W. at 271. In *In re Peterson,* 253 U.S. 300, 40 S.Ct. 543, 64 L.Ed. 919 (1920), the U.S. Supreme Court reviewed the order of a district judge appointing an auditor (in a suit upon an account for goods sold) to make a preliminary examination, hear evidence, and report his findings, with a view to simplifying the issues for the jury. The Supreme Court noted that there is no act of Congress which either authorizes or forbids such a procedure and that therefore the issue was whether the trial court had "inherent power" to supply itself "with this instrument for the administration of justice when deemed by it essential." The Supreme Court held that indeed the trial court had such authority where the purpose of the trial court was to further the administration of justice by allowing the jurors to better perform their specific duty. 253 U.S. at 314, 40 S.Ct. at 547.

■ From these authorities we derive the principle that the trial court is not strictly limited in the exercise of its authority to that which is expressly provided by statute, rule or regulation. The court has "inherent authority" to make such reasonable orders as are necessary for the assistance of the finder of fact in its mission of truth-seeking. In determining whether the trial court has exceeded its jurisdiction, therefore, we look not merely to the rules of procedure and to legislative enactments, but also to whether the trial court's order is a reasonable exercise of its "inherent authority."

■ Here, the trial court has issued an extraordinary order requiring a proposed expert witness to be subjected to thorough interrogation concerning his objectivity as

a precondition to being allowed to serve as an expert witness. Although not a flat denial of the expert's right to serve, this order requires Dr. Lichtor, if he wishes to try to serve as an expert in this case, to undergo the unpleasant procedure of providing documentation of private financial matters in order to allay qualms concerning his objectivity. Such an order can be justified only where the trial court has reasonable grounds to believe that the proposed discovery will tend to show that the testimony of the expert presents a significant risk of confusing, misleading, or distracting the jury. "The essential test of the admissibility of expert opinion evidence is whether it will be helpful to the jury." *Hendricks v. M–K–T Ry. Co.*, 709 S.W.2d 483, 493 (Mo.App.1986).

 Missouri has not directly addressed the precise issue of the authority of the trial court to refuse to allow a proposed expert to testify on grounds of lack of objectivity. The sentiment supporting such authority to exclude such a witness has been expressed as follows:

> [T]he trial judge ought to insist that a proffered expert bring to the jury more than the lawyer can offer in argument.
>
> \* \* \* \* \* \*
>
> [T]he professional expert is now commonplace. That a person spends substantially all of his time consulting with attorneys and testifying is not a disqualification. But experts whose opinions are available to the highest bidder have no place testifying in a court of law, before a jury, and with the imprimatur of the trial judge's decision that he is an "expert."

*In re Air Crash Disaster at New Orleans,* 795 F.2d 1230, 1233–34 (5th Cir.1986).

It has been noted by various commentators and courts that the "venality of some experts" has become a matter of "deep concern." [1] A "venal" expert is an expert whose opinions are available to the highest bidder—a mercenary. A mercenary with professional qualifications is likely to be a greater hindrance to a fair trial than a biased lay witness. By showing the natural bias of the lay witness, whether it be by relationship, friendship, employment or other factor, the cross-examiner brings into perspective for the jury the predisposition of the witness. In contrast, a witness appearing as a physician with strong professional qualifications has no readily discernible predisposition. The physician is a person who, it is understood, has been specially trained in clinical objectivity and scientific precision. The physician has been schooled in the ethics of the hippocratic oath and its commitment to the highest principles of idealism and virtue. The physician is seen, by virtue of calling, as impartial. A physician is also perceived as a busy, important, intelligent person. The physician is referred to by all parties as an "expert." This "expert," by the way, is the only category of witness which the legislature has specifically authorized to "invade the province of the jury" by stating an opinion as to an ultimate issue to be decided by the trier of fact. Section 490.-065, RSMo Supp.1991.

Because of concerns about the effect on a jury of a venal expert witness, various federal courts have held that the trial court may refuse to allow an expert to testify where the objectivity of the witness is in dispute. *E.g., Liechty v. Terrill Trucking Co.*, 53 F.R.D. 590 (E.D.Tenn.1971); *Pierce v. Brovig*, 16 F.R.D. 569 (S.D.N.Y.1954). In addition, other courts have held that, upon a showing of a relationship sugges-

**1.** Advisory Committee's Note to Rule 706 of the Federal Rules of Evidence. *See also Johnston v. United States*, 597 F.Supp. 374, 411 (D.Kan. 1984) (finding certain witnesses were biased and became "advocates for a cause."); *Trower v. Jones*, 121 Ill.2d 211, 117 Ill.Dec. 136, 520 N.E.2d 297 (1988); *Lipsett v. University of Puerto Rico*, 740 F.Supp. 921, 924 (D.C.Puerto Rico 1990); Michael H. Graham, *Impeaching the Professional Expert Witness by a Showing of Finan-*

*cial Interest,* 53 Ind.L.J. 35 (1977–1978). The concerns have been expressed for many years. *See, e.g.,* William L. Foster, *Expert Testimony— Prevalent Complaints and Proposed Remedies,* 11 Harv.L.Rev., 169 (1897); *Winans v. New York and Erie R. Co.*, 62 U.S. (How.) 88, 101, 16 L.Ed. 68 (1858); *Schlagenhauf v. Holder*, 379 U.S. 104, 85 S.Ct. 234, 13 L.Ed.2d 152 (1964) (Douglas, J., dissenting).

tive of bias and prejudice, a court should reject a particular physician proposed as an expert. *E.g., Martin v. Superior Court of County of Maricopa,* 104 Ariz. 268, 451 P.2d 597 (Ariz. en banc 1969); *Adkins v. Eitel,* 2 Ohio App.2d 46, 206 N.E.2d 573 (Ohio 1965); *Main v. Tony L. Sheston–Luxor Cab Co.,* 249 Iowa 973, 89 N.W.2d 865 (1958).

In *State ex rel. McCloud v. Seier,* 567 S.W.2d 127 (Mo. banc 1978), defendant moved that plaintiff be ordered examined in behalf of defendant by one of plaintiff's own personal treating physicians. When the trial court indicated an intention to order such examination over plaintiff's objection, plaintiff sought a writ of prohibition. The court in *Seier* granted relief to plaintiff, making it clear that defendant does *not* have an absolute right to have an examination conducted by any proposed expert it chooses. *Id.* at 129. In *Seier,* the trial court was not purporting to exercise its discretion to restrict defendant's right to an examination by the physician of its choice, but rather the trial court was simply intending to "rubber stamp" defendant's request for a particular expert. In *State ex rel. Metro. Trans. Services, Inc. v. Meyers,* on the other hand, where it was held that the trial court must have a reason for excluding an expert, the trial court *was* purporting to exercise discretion to deny defendant its choice of expert. The problem in *Meyers,* however, was that no legal basis for the court's exercise of discretion was stated. 800 S.W.2d at 476. The trial court in this case is apparently exercising care not to act without some articulable and reasonable basis in accordance with *Meyers,* and therefore has ordered the discovery in question.

In *Martin v. Superior Court In and For the County of Maricopa,* 104 Ariz. 268, 451 P.2d 597 (Ariz. en banc 1969), the defendant had filed a motion to compel plaintiff to submit to a physical examination to be conducted by a particular physician. Plaintiffs opposed the motion and filed an affidavit reporting that the proposed examining physician was himself a client of the defendant's attorney, and had been represented by the attorney in recent litigation. After hearing arguments, the trial court granted the motion compelling plaintiff to submit to the examination. Plaintiff then sought review of that order, contending it was an abuse of discretion to require plaintiff to submit to an examination by this particular physician, whose impartiality was suspect. The Arizona court of appeals agreed, holding that the alleged relationship between lawyer and physician was sufficient to require the trial court to examine the issue of bias before ruling on the motion.

> We hold that the trial court should have made its determination only after an examination of the doctor or the introduction of other competent evidence as to whether the relationship with (the defendant's attorney) would render his examination less impartial than that intended by Rule 35(a) [the equivalent of Federal Rule 35 and Missouri Rule 61.01]. It is within the discretion of the trial court to appoint the physician chosen by the defendant if it is determined by the court that the interests of justice will best be served in that manner. *When there is serious objection to the appointment of a physician, as in the instant case, the trial court has the duty of making such a determination from evidence introduced at a hearing.* The defendant seeking a physical examination of a plaintiff has no absolute right to the choice of his own physician. In the instant case, the failure to adequately inquire into the nature and the effect of the relationship on the question of bias deprived the plaintiff of the extent of consideration to which she is entitled under Rule 35(a).

*Id.* 451 P.2d at 600 (emphasis added).

While the Arizona Supreme Court speaks at one point of the issue of "bias," we believe that a more operative term with regard to expert testimony is the word "objectivity." "Objectivity" is the quality of being free from the influence of personal considerations in the exercise of professional skills and professional judgment. Objectivity goes directly to the issue of the expert's professional qualifications to prop-

erly and effectively aid the jury by informing the jury of matters within the expertise of the witness.

The foregoing authorities suggest that, where a party has raised by affidavit factual information suggestive of lack of objectivity on the part of the proposed examining physician, it is not inappropriate for the court to conduct a hearing concerning the issue of professional objectivity.[2] Also, of course, discovery pertinent to the hearing may be authorized.

### The Proposed Deposition of Dr. Lichtor

The plaintiff in this case maintains that, if allowed to obtain production of the documents specified and to depose Dr. Lichtor, plaintiff will show the following things: 1) Dr. Lichtor is not a practicing, treating physician, but instead earns his living as a consultant/testifier. 2) Dr. Lichtor charges unreasonably high amounts for his time. 3) Dr. Lichtor's relationship with the firm of Wallace, Saunders, et al. is such that he obtains a substantial percentage of his overall income by testifying in behalf of parties represented by that firm. 4) Dr. Lichtor uses different criteria for evaluation, depending upon whether he is evaluating for the plaintiff or for the defendant.

██ The arguments filed by plaintiff in the trial court contained numerous exhibits designed to persuade the trial court that Dr. Lichtor should not be permitted to examine plaintiff. Included in those exhibits were the following items: 1) an affidavit of the publisher of the Greater Kansas City Jury Verdict Service showing that, according to the records of that publication, forty-four percent of the cases proceeding to jury verdict in which Dr. Lichtor has testified in the preceding four years and four months have been cases in which Dr. Lichtor was engaged by the Wallace, Saunders firm; 2) a transcript of the sworn testimony of William H. Seaton, who testified in detail concerning his service of deposition subpoenas upon Dr. Lichtor and Dr. Lichtor's office records custodian, and Dr. Lich-

tor's efforts to avoid receiving the subpoenas (which was submitted for the court to consider in the light of Dr. Lichtor's denial that he was served with a subpoena); 3) copies of orders from five Jackson County cases, and one Johnson County, Kansas, case, in which Dr. Lichtor was refused permission to serve as an examining physician; 4) a transcript of a trial cross-examination of Dr. Lichtor in which he acknowledged informing attorneys that he wears his "Chiefs ring" (a ring he received for service as an orthopedic physician to the Kansas City Chiefs some years ago) on whatever hand corresponds to the side on which the jury will sit as he testifies; 5) a transcript of a trial cross-examination in which Dr. Lichtor acknowledged informing an attorney that he was going to alter his proposed evaluation of a claimant. He denied that the reason for altering his evaluation was because the opposing attorney provided him "more business," but he failed to explain why he had altered his evaluation.

██ In this case the affidavit of the publisher of the Jury Verdict Service is sufficient, in our opinion, to make it appropriate for the court to conduct a hearing concerning possible lack of objectivity, particularly such lack of objectivity as may result from the apparently extensive financial relationship between Dr. Lichtor and defendant's attorneys. When it is shown that a physician, particularly a physician who makes a living primarily as a consultant and testifier, derives a substantial percentage of professional income from one law firm, that fact alone may justify further inquiry into factors reflecting upon the professionalism and objectivity of the witness. The assertion that Dr. Lichtor may have lied in denying receipt of a subpoena for the deposition scheduled by plaintiff for April 5, 1991, and the other anecdotal items suggestive of lack of professional objectivity may also be inquired into. While the trial court made no specific legal finding as to the basis for authorizing this

---

**2.** In this case, we need not decide, as did the Arizona Supreme Court in *Martin*, that a trial court *must* conduct a hearing as to the objectivi-

ty of the proposed expert in such a case. Here, the only issue is whether the trial court *may*, in some circumstances, conduct such an inquiry.

procedure, we find that the trial court in this case was justified in authorizing discovery related to Dr. Lichtor's objectivity.

A reviewing court is not as well situated to determine the professional objectivity of an expert witness as is a trial judge. The role of the reviewing court should be limited to ensuring that the trial court is not acting arbitrarily or unjustly. *State ex rel. Metro. Trans. Service, Inc. v. Meyers,* 800 S.W.2d 474, 476 (Mo.App. 1990). Therefore, reasonable discretion should be allowed the trial judge in making such a determination, and the judge should be entitled to consider personal observations of the testimony given on previous occasions as well as other factors.[3]

The discovery in this case is exceptional in that it is conducted prior to the examination of the plaintiff by the proposed expert, and also in that it requires document production by the proposed expert. In recognizing the soundness of the trial court's decision to allow this exceptional discovery in this case, we nevertheless stress that great care must be exercised by courts to avoid allowing parties to engage in a new form of "overreaching" pretrial discovery and in activities which may "subvert the proceedings into a war of paper," which would unnecessarily burden the litigants with excessive expense. *State ex rel. Whitacre v. Ladd,* 701 S.W.2d 796, 799 (Mo.App.1985). Trial courts must keep in mind that excessive use of this procedure would discourage capable, objective professionals from being willing to undertake serving as expert witnesses. In any case where such discovery is found necessary in the future, the adoption of specific findings by the trial court should demonstrate the justification for the order. The justification must have an articulable legal basis. *State ex rel. Metro Trans. Services, Inc. v. Meyers,* 800 S.W.2d 474 (Mo.App. 1990). We do not decide this case as though it involved the usual expert witness. Rather, we decide this case as involving a singular set of facts. The procedure here approved will be the very rare exception and not the rule.

Following the discovery which the court has authorized, the trial court in a special hearing in this case may consider evidence which would be admissible to show a financial interest of the witness in consulting relationships. It is clear, for instance, that even in the trial of the substantive issues an opposing party may show that an expert is being paid for the time spent testifying, and the amount of such compensation may be shown. *Board of Public Buildings v. GMT Corp.,* 580 S.W.2d 519 (Mo.App.1979); *Highway Ins. Underwriters v. Dempsey,* 232 S.W.2d 117 (Tex.Ct.App.1950). Counsel may also inquire as to how the expert came to be employed as an expert in the case. *Schuler v. St. Louis Gas Co.,* 322 Mo. 765, 775,

---

**3.** On April 15, 1987, the Honorable G. Joseph Pierron in *McGhee v. Kirch,* Case No. 86C5345 in the District Court of Johnson County, Kansas, denied Dr. Lichtor the opportunity to serve as an examining physician in a lengthy memorandum decision which included specific findings of Dr. Lichtor's bias and lack of candor. Two years later, on May 24, 1989, Judge Pierron again denied Dr. Lichtor the opportunity to serve as an examining physician, setting forth specific findings and also incorporating the earlier memorandum from the *McGhee* case. *Curry v. Klein,* Case No. 88C5612, District Court of Johnson County, Kansas.

Judge Pierron's findings were recently upheld in *Curry v. Klein,* 251 Kan. 670, 840 P.2d 443 (1992). The Kansas Supreme Court noted that Judge Pierron had based his refusal primarily on observations of Dr. Lichtor's testimony on five previous occasions. Specifically, the judge noted instances when Dr. Lichtor exhibited a lack of candor and an evasiveness when questioned on his professional qualifications and experiences as an expert witness. In the accompanying memorandum, the judge noted instances of Dr. Lichtor "puffing" concerning his credentials, dissembling when asked about his denial of admission to the American Academy of Orthopedic Surgeons, professing to be unfamiliar with his income, being unreasonably dogmatic in his testimony, and ascribing "foul and base motives to plaintiffs who complain of pain following injuries." *McGhee v. Kirch,* order of April 15, 1087, slip op. at p. 10. The Kansas Supreme Court stated that while reliance on the court's personal observations ordinarily would not be sufficient, nevertheless "within the context or K.S.A. 60–235 [the counterpart to Rule 61.01] and the unusual circumstances herein," such findings were sufficient to support the decision of the court to refuse to order the examination. *Curry v. Klein,* at 446.

18 S.W.2d 42, 46 (1929). The fact that a witness regularly is employed by a particular category of party, such as an insurance company, may also be shown. *Id.* So also an opposing party may show the fact of previous employment by the same party, *Zarisky v. Kansas City Public Service Co.*, 239 Mo.App. 396, 186 S.W.2d 854 (1945); *Carlson v. Kansas City C.C. & St. J. Auto Transit Co.*, 221 Mo.App. 537, 282 S.W. 1037 (1926); or the fact of previous employment by the same attorneys utilizing him in the case in question, *Lammert v. Wells*, 321 Mo. 952, 13 S.W.2d 547 (1928); *Gwathmey v. United States*, 215 F.2d 148, 159 (5th Cir.1954). It has also been held that an expert may be cross-examined about fees earned in prior cases. *Collins v. Wayne Corp.*, 621 F.2d 777 (5th Cir. 1980).

■ We hold also that the trial judge in this case has discretion to allow testimony as to the amount of annual income derived from employment as an expert witness. *Trower v. Jones*, 121 Ill.2d 211, 117 Ill.Dec. 136, 520 N.E.2d 297 (1988). "Evidence that a witness makes substantial income from testifying does not necessarily imply that his fees are unreasonable, but such evidence does illuminate the financial interest the expert has in giving such testimony." *Id.* 520 N.E.2d at 301. There may, of course, be other items which could constitute evidence of lack of professional objectivity, such as 1) a tendency to evaluate claimants according to different standards, depending upon whether the claimant is being examined for the claimant's own attorney or for the defendant's attorney; 2) a willingness or desire to charge a fee commensurate with the result obtained rather than a fixed or hourly fee which is independent of the result; 3) a readiness to offer opinions outside the scope of the witness' expertise, such as opinions as to whether a claimant is purposefully fabricating complaints; and 4) the habit of answering questions on cross-examination in an unfair or manipulative manner, seeking to embarrass or belittle the examining attorney.

■ The trial court should, of course, restrict such discovery so that it is no more intrusive than necessary. Counsel should never be permitted to harass, badger and humiliate the proposed witness with inquiries not strictly necessary to the discovery of matters relevant to professional objectivity. The privacy of the expert as to personal finances, professional associations, and patients/clients should be respected and should be invaded only as necessary to insure the honesty and accountability of the expert in responding to legitimate inquiries. It must also be recognized, however, that a venal expert witness could not be expected to fully answer inquiries as to which the witness is not required to produce documentation. A delicate balancing of privacy interests against the need for accountability therefore becomes the responsibility of the trial court.

In this case, the subpoena for Dr. Lichtor required production of the following:

1) Any and all of your financial records for the years 1987, 1988, 1989, 1990 and 1991.

2) Complete copies of your federal and state income tax returns for 1987, 1988, 1989, 1990 and 1991.

3) Any and all records, billings, accounts receivable, receipts or other records showing services rendered by you for Wallace, Saunders, Austin, Brown and Enochs, Chtd., a partnership or professional corporation, or any members or associates thereof, for the years 1987, 1988, 1989, 1990 and 1991, such services to be inclusive of:

a) examination of claimants for clients of such firm;

b) examination of parties to suits against clients (or the insureds of clients) of such firm;

c) testimony given in any case at the request of any member, associate or employee connected with such firm;

d) medical reports written or opinions given at the request of any member, associate or employee connected with such firm.

4) Any records for the years 1987, 1988, 1989, 1990 and 1991 showing income received by you for performance of any surgical procedure, reservation of any

surgical suite or rendition of any treatment to any patient.

██ Dr. Lichtor and Casualty argue that documents which are related only to the credibility of a witness are not within the scope of discovery authorized by Rule 56.01(b). They argue that evidence disclosed by documents sought in discovery must be material and relevant to the substantive issues of the case and not merely for impeachment purposes. In *Willis v. Brot*, 652 S.W.2d 738 (Mo.App.1983), it was stated that such impeachment information was within the scope of discovery, but it was held that such information is discoverable only by deposition and not by interrogatories addressed to a party. In *State ex rel. Whitacre v. Ladd*, 701 S.W.2d 796 (Mo. App.1985), decided two years after *Willis*, the court regarded the scope-of-discovery issue as undecided, but noted that the trend was to allow discovery of such documents.[4] *Id.* 652 S.W.2d at 798. *See* Annotation, *Discovery in Civil Case of Material Which is or May Be Designed for Use in Impeachment*, 18 A.L.R.3rd 922 (1968). In any event, as we have seen, the court's authority may not be limited by Rule 56.01(b) where the requirements of a fair trial validate the reasonable exercise of the court's power to enable the court to determine whether expert testimony would be helpful to the jury.

In *State ex rel. Whitacre v. Ladd*, 701 S.W.2d 796 (Mo.App.1985), the plaintiff issued a deposition subpoena which sought production of all documents which recorded matters related to the proposed expert's previous court testimony, deposition schedules, office examinations and charges for his services in consulting, examining claimants, and testifying, over a two and-a-half

year period. This subpoena further commanded a compilation of statistical information for the same period concerning seven exhaustive categories of data related to examinations, reports, depositions, reports and court appearances. The court in *Whitacre* held that the subpoena required so much in the way of compilation that it was oppressive, burdensome and intrusive.

> Many hours, more likely days, would have to be spent by Dr. Frederick or members of his staff in manually searching patient files and reviewing calendars, appointment books, ledgers and notebooks for the statistics sought. Without question, the onerous task required to meet the demands of the subpoena would constitute an intrusive interference with relator Frederick's medical practice.
>
> In balancing the need of the plaintiffs to obtain the information against the burden of furnishing the documents requested, this court concludes that the burden on Dr. Frederick clearly outweighs the need of the plaintiffs below.

*Id.* at 799.

As in *Whitacre* the court deemed it unnecessary to decide whether the items sought were within the scope of discovery, so we deem it in this case. Here, the order of the trial court is grounded in the authority of the court to restrict a party's right to call a particular person as an expert, rather than in the general authority of the court to enforce compliance with the rules of discovery. The trial court has made very clear in this case that the only penalty which may be suffered by defendant Casualty in the event of Dr. Lichtor's failure to cooperate with discovery is simply the disqualification of Dr. Lichtor as a proposed expert. There is no threat of any sanction

---

4. The language of Rule 56.01(b) is identical to the applicable portion of Federal Rule 26. In federal actions, the courts commonly allow discovery of information with which to impeach witnesses for the opposition. 8 Wright & Miller, Federal Practice and Procedure, § 2015 (1970). "Surely inconsistent statements, criminal convictions, proof of bias, and similar material, being themselves admissible evidence, cannot be excluded from the scope of discovery." *Id.* p. 115. "[T]he nature and extent of a witness' motives and his interest in the outcome of the case bear importantly upon an evaluation of the witness' objectivity, his bias, and the weight to be accorded his testimony." *U.S. v. IBM Corp.* 66 F.R.D. 215 (S.D.N.Y.1974); *contra, Russell v. Young*, 452 S.W.2d 434 (Tex.1970) (financial records of physician witness were not discoverable for purposes of showing financial interest of physician as frequent testifier for plaintiffs); *Jones v. Bordman*, 243 Kan. 444, 759 P.2d 953 (1988) (quashing subpoena for deposition of Dr. Lichtor).

to defendant under Rule 61.01 or otherwise. Defendant may select another medical examiner and proceed with its defense unscathed. In the absence of some showing that Dr. Lichtor's service is somehow essential to a fair trial for defendant, we view the court's order as simply an exercise of the court's authority to restrict the use of a particular proposed expert about whose objectivity substantial question has been raised by virtue of a factual showing that a large part of the witness' revenues are derived from the law firm conducting the defense.

 In contrast to the deposition subpoena in *Whitacre*, the deposition subpoena in this case does not require any compilation of statistics. It simply requires the collection of tax returns and business and professional records which would normally be maintained by Dr. Lichtor in an orderly, retrievable form independent of any subpoena. The first item requested of Dr. Lichtor (all financial records for the past five years) causes some concern, however. This item is very vague and would seem to be highly invasive of Dr. Lichtor's privacy since it could arguably require production of documents such as bank statements, documents reflecting securities transactions, and other financial matters completely unrelated to his professional income and professional relationships. Consequently, item 1 would involve some burden for Dr. Lichtor while the relevance is remote and the request seems to be lacking in sensitivity to reasonable privacy concerns. Item 2 (the production of tax returns), while invasive of privacy, is not burdensome and is nevertheless a very useful tool in assuring the accountability of Dr. Lichtor's responses as to his professional income. It is less invasive and burdensome than item 1. Item 3 (records related to billings for services provided Wallace, Saunders), while perhaps slightly burdensome, nevertheless could prove to result in discovery of materials highly relevant to an evaluation of Dr. Lichtor's objectivity. Without the production of these documents, gaining meaningful data as to the relationship of Dr. Lichtor to the Wallace, Saunders firm may be extremely difficult.

Item 4 (records of income for services in providing treatment) since it relates to records showing income secured from medical activities, and not to records showing the activities themselves, is not extremely invasive or burdensome. Such data would be useful in insuring that accurate information is provided as to the extent of Dr. Lichtor's active medical practice. In summary, the only item sought which appears abusive and unjustified is the first item. The trial court did not abuse its discretion in allowing the other items of the proposed discovery.

There is no indication in the record before us that Dr. Lichtor has asked the trial court to forbid the dissemination of any information obtained through the deposition to others not privy to the case. If Dr. Lichtor requests that the trial court consider such matters, either before or after the deposition, we are confident the trial court will exercise its discretion to reasonably protect against dissemination of such information to others not a party to this proceeding, while still authorizing legitimate use by the parties in this case.

 In order to help protect the witness from an unduly prolonged and burdensome deposition, the court has allowed a fee for Dr. Lichtor's time. Ordinarily, a party deposing the opposing party's expert negotiates a fee for the taking of the expert's deposition. In the absence of agreement between the expert and the opposing party, the court may set a reasonable fee for the expert's time. Here, it seems the examination to be conducted in the deposition is not an examination of an expert witness pursuant to Rule 56.01(b)(4). In this case it is simply an examination of a person who may or may not become an expert witness. As part of the authority to impose reasonable conditions on the exercise of the discovery contemplated herein, the court may establish a fee to be paid the expert. Also, the court has authority to set a fee as an exercise of its authority to design protective orders under Rule 56.-01(c). The payment of the fee is simply a condition under which the discovery is allowed to proceed. The fee established by

the court must have a basis in reason and may not be completely arbitrary.

 It is necessary for the protection of Dr. Lichtor that the hourly rate of compensation be at such a level that neither party is particularly able to use the monetary aspect as a lever to burden or harass the other party during this discovery. If no fee is provided, or if the hourly rate is too low, plaintiff could unduly extend the questioning of Dr. Lichtor. If the hourly rate is too high, Dr. Lichtor or defendant Casualty could attempt to prolong the questioning. While the hourly rate of $85.00 allowed Dr. Lichtor is on the low side, it would seem to be high enough to discourage plaintiff from unduly prolonging the deposition, particularly since plaintiff will also be responsible for one-half of the fees of the special master as well as the time of plaintiff's own attorneys. It cannot be said that the fee established is completely arbitrary. Also, the trial court's good faith is evident in that the court set the fee for the special master, an experienced and able practicing attorney, at the same level as the fee for Dr. Lichtor. Dr. Lichtor has not carried his burden of showing that Judge Clark exceeded his jurisdiction in the discovery order, except as to item 1 of the subpoena. We do not find an abuse of discretion.

It may be true that few physicians would submit to such an examination as ordered in this case. That is why such an order could be viewed as being reasonable only where the trial court has a sufficient legal reason to believe that the discovery would lead to evidence establishing the likelihood of venality of the physician. Any order such as the one before us in this case must be related to a reasonable and specific basis for believing that the testimony of the proposed expert would be such as would, because of venality or otherwise, tend to confuse, mislead or distract the jury. We hold that in this case the order was justified.

In conclusion, we hold the trial court has not exceeded its authority in its order in this case, except to the extent that the court order requires enforcement of item 1

of the subpoena (production of any and all financial records for five years). The preliminary writ is modified so that the trial court is directed not to enforce item 1 of the deposition subpoena. In all other respects, the preliminary writ is dissolved and set aside.

All concur.