STATE ex rel. Donald CREIGHTON, Ph.D., Relator,

v.

Honorable Randall R. JACKSON, Respondent.

No. WD 48932.

Missouri Court of Appeals, Western District.

May 17, 1994.

Motion for Rehearing and/or Transfer to Supreme Court Denied June 28, 1994.

Application to Transfer Denied Aug. 15, 1994.

Phillip S. Smith, Kansas City, for relator.

Joseph A. Sherman, Jr., Kansas City, for respondent[s].

Before BRECKENRIDGE, P.J. and LOWENSTEIN and SMART, JJ.

SMART, Judge.

This case arises out of a subpoena duces tecum served upon the relator, Donald Creighton, Ph.D., by Weiler and Co., Inc., a defendant in a products liability action brought in Buchanan County by Bradley C. Hurd. Dr. Creighton, a professional engineer, was designated as an expert witness by plaintiff to provide expert testimony in the field of mechanical engineering. In connection with a scheduled deposition of Dr. Creighton, defendant served Dr. Creighton with a subpoena duces tecum specifying various documents which Dr. Creighton was requested to produce at his deposition, including those portions of his income tax returns for the past five years reflecting income received as an expert consultant or witness. Dr. Creighton declined to appear at the deposition, and plaintiff sought an order quashing the subpoena duces tecum. Following a hearing on the motion, the trial court denied the motion to quash, specifying that Dr. Creighton was required to appear and to produce Schedule C's and form 1099's reflecting income from consulting and testifying for the last five years.

After the trial court issued its order, Dr. Creighton sought a writ of prohibition in this court. Dr. Creighton contended in his application for a writ of prohibition that the trial court exceeded its jurisdiction in issuing its

order directing that the documents in question be produced. A preliminary writ was issued January 25, 1994. The parties have briefed and argued the issues. For the reasons stated below, the preliminary order is dissolved.

Dr. Creighton, the relator, first contends that the items sought by defendant are not within the scope of discovery. Dr. Creighton argues that, therefore, the trial court exceeded its authority in denying the motion to quash and ordering compliance with the subpoena. Dr. Creighton argues that the production of the documents violates the expert's interest in reasonable privacy, constitutes harassment, and is burdensome. Relator contends that "no expert" would agree to produce any part of a tax return to an opposing attorney. Relator also points to the fact that Rule 56.01(b)(4), which governs discovery of facts known and opinions held by experts, limits deposition discovery to "the facts and opinions to which the expert is expected to testify."

In response, defendant argues that it has long been recognized that any pecuniary interest of a witness in the litigation is both discoverable and admissible in evidence. Defendant argues that, in view of the critical importance of expert testimony in certain types of litigation, it is imperative that the cross-examiner be entitled to show any factors which may influence the objectivity of the expert witness. Defendant argues that discovery of the expert's earnings as a witness and consultant is reasonably calculated to lead to such information as whether an expert charges an unreasonably high fee, and whether the expert charges a premium in connection with successful results (whether, in effect, the expert charges an unethical contingency fee). Defendant argues, moreover, that Dr. Creighton was specifically found by the trial court in this case to be "less than forthcoming regarding information pertaining to his annual income as a consultant/witness," and that such finding justifies the order in this case.

In *State ex rel. Lichtor v. Clark*, 845 S.W.2d 55, 66 (Mo.App.1992) the issue was whether a trial court could order discovery of information bearing on an expert's financial relationship with a particular law firm as a condition of permitting that particular physician to serve as an expert witness. It was held in that case that such discovery was grounded in the inherent authority of the court to determine whether a particular witness is sufficiently objective as an expert to be helpful to the fact finder in resolving the issues.

In this case, the trial court is not determining whether Dr. Creighton should be permitted to serve as an expert. There has been no motion to disqualify Dr. Creighton. Rather, the issue here is simply whether the order to *produce the documents* in question at Dr. Creighton's deposition exceeds the trial court's authority with regard to discovery.

■ In matters of discovery, trial courts are allowed broad discretion. *State ex rel. Metro. Transp. Services, Inc. v. Meyers*, 800 S.W.2d 474, 476 (Mo.App.1990). It is only for an abuse of discretion amounting to an injustice that the appellate courts will interfere. *Great W. Trading Co. v. Mercantile Trust Co.*, 661 S.W.2d 40, 43 (Mo.App.1983). An abuse of discretion will be found only when a trial court ruling is clearly "against the logic of the circumstances then before the court" and "so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration." *Meyers*, 800 S.W.2d at 476.

■ Of course, trial court discretion is pertinent only where the information sought is within the scope of discovery. Discretion plays no role where a discovery inquiry is clearly outside the scope of discovery and outside the inherent authority of the court to ensure that the jury will not be confused or misled. Discretion is involved where an inquiry which is *within* the scope of discovery runs against an interest in privacy or against an assertion that the proposed discovery is burdensome.

In determining whether the items requested in this case are within the scope of discovery, we look first to Rule 56.01(b), which sets forth the scope of discovery, stating:

Unless otherwise limited by order of the Court in accordance with these rules, the scope of discovery is as follows:

(1) *In General.* Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party, including the existence, description, nature, custody, condition and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter. It is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.

This language is identical to the language of Federal Rule 26(b)(1). On its face, the rule appears to limit discovery to that which is relevant to "the subject matter" of the action. The term "subject matter" has been broadly construed in federal litigation, extending to information beyond the merits. 4 J. Moore, J. Lucas, & G. Grotheer, Moore's Federal Practice ¶ 26.56 (2d ed. 1993). Accordingly, when there are issues as to such matters as jurisdiction and proper venue, the pertinent facts have been held to be discoverable. *Id.* Some courts have also permitted inquiry as to matters which affect the credibility of a deponent, or which might be used in impeaching a witness at trial. *Id.; see also* 8 C. Wright & A. Miller, Federal Practice and Procedure, § 2015, at 113 (1970).

In Missouri, the answer to the question of whether such information is within the scope of discovery is not entirely clear. In *State ex rel. Whitacre v. Ladd,* 701 S.W.2d 796 (Mo. App.1985), the court regarded this very issue as undecided, and did not reach the issue. The issue was also avoided in *Lichtor* 845 S.W.2d at 66. In *Willis v. Brot,* 652 S.W.2d 738 (Mo.App.1983), however, the court regarded such impeachment information as being within the scope of discovery, while holding it was not discoverable by an *interrogatory addressed to a party.* The trend in other jurisdictions has been to allow such discovery. *See* Annotation, *Discovery, In Civil Case, Of Material Which Is Or May Be Designed For Use In Impeachment,* 18 A.L.R.3d 922 (1968).

■ At common law, of course, there was no automatic right to discovery. 27 C.J.S. *Discovery* § 1 (1959). When the discovery rules were proposed and adopted, they were intended to allow the parties a greater opportunity to gather information as to pertinent facts and documents within the knowledge and possession of the other party, in order to ensure a more just adjudication on the merits. *Id.* They also were intended to guarantee accountability and to reduce surprise at trial. *See* 6 J. Wigmore, Wigmore on Evidence § 1845, at 487 (1976). The scope of matters subject to discovery was intended to be broad, consistent with the purposes behind the rules of discovery. 8 C. Wright & A. Miller, Federal Practice and Procedure § 2001, at 15 (1970). Thus, not only may parties discover facts which are relevant to the litigation, but they may also discover that which is reasonably calculated to lead to the discovery of admissible evidence. *Id.* § 2007–2008, at 37, 48. The courts, however, are given broad authority to intervene to protect against abuses. *See* 27 C.J.S. *Discovery* § 2 (1959). Where discovery inquiries could reasonably lead to the discovery of admissible evidence, the court will balance the proponent's interest in discovery of the information against any legitimate interest of the other party in being able to avoid disclosure. The answer to discovery abuses is not to narrowly define the scope of discovery, but rather to employ reasonable measures to protect against unduly burdensome and unduly intrusive discovery inquiries. *See* 8 C. Wright & A. Miller, Federal Practice and Procedure § 2008, at 45 (1970).

There is no apparent reason that credibility issues must be off limits to discovery. *Id.* § 2015, at 113; *Willis v. Brot,* 652 S.W.2d at 739–740. The fact that the eyewitness to a vehicular collision happens to be a close friend of the plaintiff may be shown at trial, and should be discoverable. The fact that an eyewitness to a vehicular collision is a major stockholder in a defendant trucking corporation should also be discoverable. That does

not mean, however, that every eyewitness to a collision involving a publicly held corporation may be compelled by subpoena to produce at a deposition all of his or her investment records so that counsel can investigate whether the witness has a financial interest in the defendant corporation. Courts generally would prefer to assume that such a witness will tell the truth if asked directly about any financial interest, unless there is some particular reason to believe the witness may not tell the truth. It is not that there is some logical reason to assume that the documents would be of no value. Rather, it is simply that the courts desire to reasonably limit the burdens which litigants might choose to place on witnesses if allowed unfettered authority within the scope of discovery. Therefore, the courts will protect against discovery efforts which are unreasonable and abusive. *See* 27 C.J.S. *Discovery* § 2 (1959).

■■■■ We conclude, in accordance with the spirit of discovery rules, that the impeachment information sought in this case is within the scope of discovery. *Willis v. Brot,* 652 S.W.2d 738, 739–40 (Mo.App.1983). Therefore, if it is found to be a reasonable discovery effort under the particular circumstances of the case, and not abusive, disclosure of such information may be ordered within the discretion of the trial court. What we said in *Lichtor* is also generally applicable in cases such as this:

> The trial court should, of course, restrict such discovery so that it is no more intrusive than necessary. Counsel should never be permitted to harass, badger and humiliate the proposed witness with inquiries not strictly necessary to the discovery of matters relevant to professional objectivity. The privacy of the expert as to personal finances, professional associations, and patients/clients should be respected and should be invaded only as necessary to insure the honesty and accountability of the expert in responding to legitimate inquiries. It must also be recognized, however, that a venal expert witness could not be expected to fully answer inquiries as to which the witness is not required to produce documentation. A delicate balancing of privacy interests against the need for

accountability therefore becomes the responsibility of the trial court.

845 S.W.2d at 65.

■■■■ In determining in this case whether the trial court has abused its discretion in refusing to quash the subpoena duces tecum, we look to the factors presented to the trial court in justification of the subpoena. In arguing in support of the subpoena, defendant presented the trial court with excerpts from previous depositions of Dr. Creighton which established that since 1989, Dr. Creighton has earned his living as a consultant and expert witness. More importantly, defendant presented an excerpt from a previous deposition of Dr. Creighton taken by counsel for defendant in a previous case in which Dr. Creighton stated he could not estimate his annual earnings from consulting activities. Dr. Creighton in that deposition stated he could not provide even a "ballpark" figure. Dr. Creighton, in addition to stating he was unable to answer the question, also refused to make available any documentation from which the information sought could be determined.

■■■■ The trial court, having considered the materials presented by defendant, specifically found that Dr. Creighton had been "less than forthcoming" regarding his earnings as an expert witness. We cannot say that the trial court finding was arbitrary and unreasonable. This court observes that most people are generally able to articulate something about their earnings in their various business and professional endeavors. The trial court could reasonably have concluded that the sincerity of Dr. Creighton's lack of memory was suspect. The court could reasonably have anticipated that Dr. Creighton will attempt to evade such inquiries if put to him in the absence of any documentation to which reference may be made. The order in this case does not present an appearance of arbitrariness or of a lack of careful consideration. The trial court's action in limiting the subpoena simply to schedule C's and 1099's shows that the trial court was attempting to balance Dr. Creighton's privacy interests against defendant's interest in discovering

the information in question. We hold that the trial court has not abused its discretion.[1]

The preliminary order in prohibition is dissolved.

All concur.

---

1. The fact that this court has not found the trial court's actions in this case to be an abuse of discretion should not be understood as meaning that the information in question will necessarily be admissible at trial. The trial court, thus far, has concerned itself only with the issue of whether the discovery in question is *reasonably calculated* to lead to the discovery of admissible evidence. The information will be admissible only if it legitimately reflects on the objectivity of the expert.